# NATIONAL LABOR RELATIONS BOARD *v.* TRANSPORTATION MANAGEMENT CORP.

No. 82–168.   Argued March 28, 1983—Decided June 15, 1983

WHITE, J., delivered the opinion for a unanimous Court.

*Deputy Solicitor General Wallace* argued the cause for petitioner. With him on the brief were *Solicitor General Lee, Carolyn F. Corwin, Norton J. Come,* and *Linda Sher.*

*Martin Ames* argued the cause and filed briefs for respondent.*

JUSTICE WHITE delivered the opinion of the Court.

The National Labor Relations Act (NLRA or Act), 29 U. S. C. § 151 *et seq.* (1976 ed. and Supp. V), makes unlawful the discharge of a worker because of union activity, §§ 8(a)(1), (3), as amended, 61 Stat. 140, 29 U. S. C. §§ 158(a)(1), (3),[1] but employers retain the right to discharge workers for any number of other reasons unrelated to the employee's union activities. When the General Counsel of the National Labor Relations Board (Board) files a complaint alleging that an employee was discharged because of his union activities, the employer

---

*Briefs of *amici curiae* urging affirmance were filed by *John W. Noble, Jr.,* and *Stephen A. Bokat* for the Chamber of Commerce of the United States; and by *Joseph D. Alviani* for the New England Legal Foundation et al.

Briefs of *amici curiae* were filed by *J. Albert Woll, Michael H. Gottesman, Robert M. Weinberg,* and *Laurence Gold* for the American Federation of Labor and Congress of Industrial Organizations; and by *Gerard C. Smetana* and *Gary L. Starkman* for the Council on Labor Law Equality.

[1] Section 8(a), as set forth in 29 U. S. C. § 158(a), provides, in relevant part:

"It shall be an unfair labor practice for an employer—

"(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;

.        .        .        .        .

"(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization . . . ."

may assert legitimate motives for his decision. In *Wright Line*, 251 N. L. R. B. 1083 (1980), enf'd, 662 F. 2d 899 (CA1 1981), cert. denied, 455 U. S. 989 (1982), the Board reformulated the allocation of the burden of proof in such cases. It determined that the General Counsel carried the burden of persuading the Board that an antiunion animus contributed to the employer's decision to discharge an employee, a burden that does not shift, but that the employer, even if it failed to meet or neutralize the General Counsel's showing, could avoid the finding that it violated the statute by demonstrating by a preponderance of the evidence that the worker would have been fired even if he had not been involved with the union. The question presented in this case is whether the burden placed on the employer in *Wright Line* is consistent with §§ 8(a)(1) and 8(a)(3), as well as with § 10(c) of the NLRA, 29 U. S. C. § 160(c), which provides that the Board must find an unfair labor practice by a "preponderance of the testimony." [2]

Prior to his discharge, Sam Santillo was a busdriver for respondent Transportation Management Corp. On March 19, 1979, Santillo talked to officials of the Teamster's Union about organizing the drivers who worked with him. Over

---

[2] Section 10(c) provides, in relevant part:

"If upon the preponderance of the testimony taken the Board shall be of the opinion that any person named in the complaint has engaged in or is engaging in any such unfair labor practice, then the Board shall state its findings of fact and shall issue and cause to be served on such person an order requiring such person to cease and desist from such unfair labor practice, and to take such affirmative action including reinstatement of employees with or without back pay, as will effectuate the policies of this subchapter . . . . If upon the preponderance of the testimony taken the Board shall not be of the opinion that the person named in the complaint has engaged in or is engaging in any such unfair labor practice, then the Board shall state its findings of fact and shall issue an order dismissing the said complaint. No order of the Board shall require the reinstatement of any individual as an employee who has been suspended or discharged, or the payment to him of any back pay, if such individual was suspended or discharged for cause." 29 U. S. C. § 160(c).

the next four days Santillo discussed with his fellow drivers the possibility of joining the Teamsters and distributed authorization cards. On the night of March 23, George Patterson, who supervised Santillo and the other drivers, told one of the drivers that he had heard of Santillo's activities. Patterson referred to Santillo as two-faced, and promised to get even with him.

Later that evening Patterson talked to Ed West, who was also a busdriver for respondent. Patterson asked, "What's with Sam and the Union?" Patterson said that he took Santillo's actions personally, recounted several favors he had done for Santillo, and added that he would remember Santillo's activities when Santillo again asked for a favor. On Monday, March 26, Santillo was discharged. Patterson told Santillo that he was being fired for leaving his keys in the bus and taking unauthorized breaks.

Santillo filed a complaint with the Board alleging that he had been discharged because of his union activities, contrary to §§ 8(a)(1) and 8(a)(3) of the NLRA. The General Counsel issued a complaint. The Administrative Law Judge (ALJ) determined by a preponderance of the evidence that Patterson clearly had an antiunion animus and that Santillo's discharge was motivated by a desire to discourage union activities. The ALJ also found that the asserted reasons for the discharge could not withstand scrutiny. Patterson's disapproval of Santillo's practice of leaving his keys in the bus was clearly a pretext, for Patterson had not known about Santillo's practice until after he had decided to discharge Santillo; moreover, the practice of leaving keys in buses was commonplace among respondent's employees. Respondent identified two types of unauthorized breaks, coffeebreaks and stops at home. With respect to both coffeebreaks and stopping at home, the ALJ found that Santillo was never cautioned or admonished about such behavior, and that the employer had not followed its customary practice of issuing three written warnings before discharging a driver. The

ALJ also found that the taking of coffeebreaks during work-
ing hours was normal practice, and that respondent tolerated
the practice unless the breaks interfered with the driver's
performance of his duties.   In any event, said the ALJ,
respondent had never taken any adverse personnel action
against an employee because of such behavior.   While
acknowledging that Santillo had engaged in some unsatisfac-
tory conduct, the ALJ was not persuaded that Santillo would
have been fired had it not been for his union activities.

The Board affirmed, adopting with some clarification the
ALJ's findings and conclusions and expressly applying its
*Wright Line* decision.   It stated that respondent had failed
to carry its burden of persuading the Board that the dis-
charge would have taken place had Santillo not engaged in
activity protected by the Act.   The Court of Appeals for the
First Circuit, relying on its previous decision rejecting the
Board's *Wright Line* test, *NLRB* v. *Wright Line*, 662 F.
2d 899 (1981), refused to enforce the Board's order and
remanded for consideration of whether the General Counsel
had proved by a preponderance of the evidence that Santillo
would not have been fired had it not been for his union activi-
ties.   674 F. 2d 130 (1982).   We granted certiorari, 459
U. S. 1014 (1982), because of conflicts on the issue among the
Courts of Appeals.[3]   We now reverse.

Employees of an employer covered by the NLRA have the
right to form, join, or assist labor organizations.   NLRA § 7,
29 U. S. C. § 157.   It is an unfair labor practice to interfere
with, restrain, or coerce the exercise of those rights, NLRA

---

[3] The Board's *Wright Line* decision has been rejected by the Second and
Third Circuits, see *NLRB* v. *New York University Medical Center*, 702 F.
2d 284 (CA2 1983), cert. pending, No. 82–1705; *Behring International, Inc.*
v. *NLRB*, 675 F. 2d 83 (CA3 1982), cert. pending, No. 82–438, as well as by
the First.   Several Circuits have expressly approved the *Wright Line* test.
See *NLRB* v. *Senftner Volkswagen Corp.*, 681 F. 2d 557, 560 (CA8 1982);
*NLRB* v. *Nevis Industries, Inc.*, 647 F. 2d 905, 909 (CA9 1981); *Peavey
Co.* v. *NLRB*, 648 F. 2d 460 (CA7 1981).

§ 8(a)(1), 29 U. S. C. § 158(a)(1), or by discrimination in hire or tenure "to encourage or discourage membership in any labor organization," NLRA § 8(a)(3), 29 U. S. C. § 158(a)(3).

Under these provisions it is undisputed that if the employer fires an employee for having engaged in union activities and has no other basis for the discharge, or if the reasons that he proffers are pretextual, the employer commits an unfair labor practice. He does not violate the NLRA, however, if any antiunion animus that he might have entertained did not contribute at all to an otherwise lawful discharge for good cause. Soon after the passage of the Act, the Board held that it was an unfair labor practice for an employer to discharge a worker where antiunion animus actually contributed to the discharge decision. *Consumers Research, Inc.*, 2 N. L. R. B. 57, 73 (1936); *Louisville Refining Co.*, 4 N. L. R. B. 844, 861 (1938), enf'd, 102 F. 2d 678 (CA6), cert. denied, 308 U. S. 568 (1939); *Dow Chemical Co.*, 13 N. L. R. B. 993, 1023 (1939), enf'd in relevant part, 117 F. 2d 455 (CA6 1941); *Republic Creosoting Co.*, 19 N. L. R. B. 267, 294 (1940). In *Consumers Research*, the Board rejected the position that "antecedent to a finding of violation of the Act, it must be found that the *sole* motive for discharge was the employee's union activity." It explained that "[s]uch an interpretation is repugnant to the purpose and meaning of the Act, and . . . may not be made." 2 N. L. R. B., at 73. In its Third Annual Report, the Board stated: "Where the employer has discharged an employee for two or more reasons, and one of them is union affiliation or activity, the Board has found a violation [of § 8(a)(3)]." 3 NLRB Ann. Rep. 70 (1938). In the following year in *Dow Chemical Co.*, *supra*, the Board stated that a violation could be found where the employer acted out of antiunion bias "whether or not the [employer] may have had some other motive . . . and without regard to whether or not the [employer's] asserted motive was lawful." 13 N. L. R. B., at 1023. This construction of the Act—that to establish an

unfair labor practice the General Counsel need show by a preponderance of the evidence only that a discharge is in any way motivated by a desire to frustrate union activity—was plainly rational and acceptable. The Board has adhered to that construction of the Act since that time.

At the same time, there were decisions indicating that the presence of an antiunion motivation in a discharge case was not the end of the matter. An employer could escape the consequences of a violation by proving that without regard to the impermissible motivation, the employer would have taken the same action for wholly permissible reasons. See, e. g., *Eagle-Picher Mining & Smelting Co.*, 16 N. L. R. B. 727, 801 (1939), enf'd in relevant part, 119 F. 2d 903 (CA8 1941); *Borden Mills, Inc.*, 13 N. L. R. B. 459, 474–475 (1939); *Robbins Tire & Rubber Co.*, 69 N. L. R. B. 440, 454, n. 21 (1946), enf'd, 161 F. 2d 798 (CA5 1947).[4]

The Courts of Appeals were not entirely satisfied with the Board's approach to dual-motive cases. The Board's *Wright*

---

[4] The Board argues that its approach to mixed-motive cases was known to Congress and ratified by the passage of the Labor Management Relations Act (LMRA), 61 Stat. 136, which reenacted §§ 8(a)(1) and 8(a)(3) almost without material change. We need not pass on this submission, since we find nothing in the legislative history of the LMRA that calls into question the decisions of the Board relevant to the issue before us now. The issue after, as well as before, the passage of the LMRA is whether the Board's construction of § 8(a) is sufficiently rational to be acceptable in the courts. We do note that nowhere in the legislative history is reference made to any of the mixed-motive cases decided by the Board or by the courts, see, e. g., *NLRB* v. *Remington Rand, Inc.*, 94 F. 2d 862, 872 (CA2) (L. Hand, J.) ("[S]ince the refusal [to negotiate] was at least one cause of the strike, and was a tort . . . it rested upon the tortfeasor to disentangle the consequences for which it was chargeable from those from which it was immune"), cert. denied, 304 U. S. 576 (1938); *NLRB* v. *Stackpole Carbon Co.*, 105 F. 2d 167, 176 (CA3), cert. denied, 308 U. S. 605 (1939); *Borden Mills, Inc.*, 13 N. L. R. B., at 474–475 (dicta); *Davis Precision Machine Co.*, 64 N. L. R. B. 529, 537 (1945); *Wright-Hibbard Industrial Electric Truck Co.*, 67 N. L. R. B. 897, 908, n. 15 (1946); *Robbins Tire and Rubber Co.*, 69 N. L. R. B., at 454, n. 21.

*Line* decision in 1980 was an attempt to restate its analysis in a way more acceptable to the Courts of Appeals. The Board held that the General Counsel of course had the burden of proving that the employee's conduct protected by § 7 was a substantial or a motivating factor in the discharge.[5] Even if this was the case, and the employer failed to rebut it, the employer could avoid being held in violation of §§ 8(a)(1) and 8(a)(3) by proving by a preponderance of the evidence that the discharge rested on the employee's unprotected conduct as well and that the employee would have lost his job in any event. It thus became clear, if it was not clear before, that proof that the discharge would have occurred in any event and for valid reasons amounted to an affirmative defense on which the employer carried the burden of proof by a preponderance of the evidence. "The shifting burden merely requires the employer to make out what is actually an affirmative defense . . . ." *Wright Line*, 251 N. L. R. B., at 1088, n. 11; see also *id.*, at 1084, n. 5.

The Court of Appeals for the First Circuit refused enforcement of the *Wright Line* decision because in its view it was error to place the burden on the employer to prove that the discharge would have occurred had the forbidden motive not been present. The General Counsel, the Court of Appeals held, had the burden of showing not only that a forbidden

---

[5] The Board has not purported to shift the burden of persuasion on the question of whether the employer fired Santillo at least in part because he engaged in protected activities. The General Counsel satisfied his burden in this respect and no one disputes it. Thus, *Texas Department of Community Affairs* v. *Burdine*, 450 U. S. 248 (1981), is inapposite. In that case, which involved a claim of racial discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U. S. C. § 2000e *et seq.* (1976 ed. and Supp. V), the question was who had "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff . . . ." 450 U. S., at 253. The Court discussed only the situation in which the issue is whether either illegal or legal motives, but not both, were the "true" motives behind the decision. It thus addressed the pretext case.

motivation contributed to the discharge but also that the discharge would not have taken place independently of the protected conduct of the employee. The Court of Appeals was quite correct, and the Board does not disagree, that throughout the proceedings, the General Counsel carries the burden of proving the elements of an unfair labor practice. Section 10(c) of the Act, 29 U. S. C. § 160(c), expressly directs that violations may be adjudicated only "upon the preponderance of the testimony" taken by the Board. The Board's rules also state that "[t]he Board's attorney has the burden of pro[ving] violations of Section 8." 29 CFR § 101.10(b) (1982). We are quite sure, however, that the Court of Appeals erred in holding that § 10(c) forbids placing the burden on the employer to prove that absent the improper motivation he would have acted in the same manner for wholly legitimate reasons.

As we understand the Board's decisions, they have consistently held that the unfair labor practice consists of a discharge or other adverse action that is based in whole or in part on antiunion animus—or as the Board now puts it, that the employee's protected conduct was a substantial or motivating factor in the adverse action. The General Counsel has the burden of proving these elements under § 10(c). But the Board's construction of the statute permits an employer to avoid being adjudicated a violator by showing what his actions would have been regardless of his forbidden motivation. It extends to the employer what the Board considers to be an affirmative defense but does not change or add to the elements of the unfair labor practice that the General Counsel has the burden of proving under § 10(c).[6] We assume that

---

[6] The language of the NLRA requiring that the Board act on a preponderance of the testimony taken was added by the LMRA, 61 Stat. 136, in 1947. A closely related provision directed that no order of the Board reinstate or compensate any employee who was fired for cause. Section 10(c) places the burden on the General Counsel only to prove the unfair labor practice, not to disprove an affirmative defense. Furthermore, it is clear

the Board could reasonably have construed the Act in the manner insisted on by the Court of Appeals. We also assume that the Board might have considered a showing by the employer that the adverse action would have occurred in any event as not obviating a violation adjudication but as going only to the permissible remedy, in which event the burden of proof could surely have been put on the employer. The Board has instead chosen to recognize, as it insists it has done for many years, what it designates as an affirmative defense that the employer has the burden of sustaining. We are unprepared to hold that this is an impermissible construction of the Act. "[T]he Board's construction here, while it may not

---

from the legislative history of the LMRA that the drafters of § 10(c) were not thinking of the mixed-motive case. Their discussions reflected the assumption that discharges were either "for cause" or punishment for protected activity. Read fairly, the legislative history does not indicate whether, in mixed-motive cases, the employer or the General Counsel has the burden of proof on the issue of what would have happened if the employer had not been influenced by his unlawful motives; on that point the legislative history is silent.

The "for cause" proviso was not meant to apply to cases in which both legitimate and illegitimate causes contributed to the discharge, see *infra*. The amendment was sparked by a concern over the Board's perceived practice of inferring from the fact that someone was active in a union that he was fired because of antiunion animus even though the worker had been guilty of gross misconduct. The House Report explained the change in the following terms:

"A third change forbids the Board to reinstate an individual unless the weight of the evidence shows that the individual was not suspended or discharged for cause. In the past, the Board, admitting that an employee was guilty of gross misconduct, nevertheless frequently reinstated him, 'inferring' that, because he was a member or an official of a union, this, not his misconduct, was *the* reason for his discharge." H. R. Rep. No. 245, 80th Cong., 1st Sess., 42 (1947) (emphasis added).

The proviso was thus a reaction to the Board's readiness to infer antiunion animus from the fact that the discharged person was active in the union, and thus has little to do with the situation in which the Board has soundly concluded that the employer had an antiunion animus and that such feelings played a role in a worker's discharge.

be required by the Act, is at least permissible under it . . . ," and in these circumstances its position is entitled to deference. *NLRB* v. *J. Weingarten, Inc.*, 420 U. S. 251, 266–267 (1975); *NLRB* v. *Erie Resistor Corp.*, 373 U. S. 221, 236 (1963).

The Board's allocation of the burden of proof is clearly reasonable in this context, for the reason stated in *NLRB* v. *Remington Rand, Inc.*, 94 F. 2d 862, 872 (CA2), cert. denied, 304 U. S. 576 (1938), a case on which the Board relied when it began taking the position that the burden of persuasion could be shifted. *E. g.*, *Eagle-Picher Mining & Smelting*, 16 N. L. R. B., at 801. The employer is a wrongdoer; he has acted out of a motive that is declared illegitimate by the statute. It is fair that he bear the risk that the influence of legal and illegal motives cannot be separated, because he knowingly created the risk and because the risk was created not by innocent activity but by his own wrongdoing.

In *Mt. Healthy City Board of Education* v. *Doyle*, 429 U. S. 274 (1977), we found it prudent, albeit in a case implicating the Constitution, to set up an allocation of the burden of proof which the Board heavily relied on and borrowed from in its *Wright Line* decision. There, we held that the plaintiff had to show that the employer's disapproval of his First Amendment protected expression played a role in the employer's decision to discharge him. If that burden of persuasion were carried, the burden would be on the defendant to show by a preponderance of the evidence that he would have reached the same decision even if, hypothetically, he had not been motivated by a desire to punish plaintiff for exercising his First Amendment rights. The analogy to *Mt. Healthy* drawn by the Board was a fair one.[7]

---

[7] Respondent also argues that placement of the burden of persuasion on the employer contravenes § 10(b) of the Act and § 7(c) of the Administrative Procedure Act, 5 U. S. C. § 556(d). Section 10(b) provides that the Federal Rules of Evidence apply to Board proceedings insofar as practicable. Respondent contends that Federal Rule of Evidence 301 requires

For these reasons, we conclude that the Court of Appeals erred in refusing to enforce the Board's orders, which rested on the Board's *Wright Line* decision.

The Board was justified in this case in concluding that Santillo would not have been discharged had the employer not considered his efforts to establish a union. At least two of the transgressions that purportedly would have in any event prompted Santillo's discharge were commonplace, and yet no transgressor had ever before received any kind of discipline. Moreover, the employer departed from its usual practice in dealing with rules infractions; indeed, not only did the employer not warn Santillo that his actions would result in being subjected to discipline, it also never even expressed its disapproval of his conduct. In addition, Patterson, the person who made the initial decision to discharge Santillo, was obviously upset with Santillo for engaging in such protected

---

that the burden of persuasion rest on the General Counsel. Rule 301 provides:

"In all civil actions and proceedings not otherwise provided for by Act of Congress or by these rules, a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast."

The Rule merely defines the term "presumption." It in no way restricts the authority of a court or an agency to change the customary burdens of persuasion in a manner that otherwise would be permissible. Indeed, were respondent correct, we could not have assigned to the defendant the burden of persuasion on one issue in *Mt. Healthy City Board of Education* v. *Doyle*, 429 U. S. 274 (1977).

Section 7(c) of the Administrative Procedure Act, 5 U. S. C. § 556(d), provides that the proponent of an order has the burden of proof. Since the General Counsel is the proponent of the order, asserts respondent, the General Counsel must bear the burden of proof. Section 7(c), however, determines only the burden of going forward, not the burden of persuasion. *Environmental Defense Fund, Inc.* v. *EPA*, 179 U. S. App. D. C. 43, 49, 58–60, 548 F. 2d 998, 1004, 1013–1015 (1976), cert. denied *sub nom. Velsicol Chemical Corp.* v. *EPA*, 431 U. S. 925 (1977).

activity. It is thus clear that the Board's finding that Santillo would not have been fired if the employer had not had an antiunion animus was "supported by substantial evidence on the record considered as a whole," 29 U. S. C. § 160(f).

Accordingly, the judgment is

*Reversed.*