**TLC LINES, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 82–2561.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 13, 1983.

Decided Sept. 27, 1983.

Lewis, Rice, Tucker, Allen & Chubb, John J. Gazzoli, Jr., St. Louis, Mo., for petitioner TLC Lines, Inc.

Before HEANEY and JOHN R. GIBSON, Circuit Judges, and HENLEY, Senior Circuit Judge.

PER CURIAM.

The National Labor Relations Board (Board) found that petitioner TLC Lines, Inc. (TLC), violated subsections 8(a)(1) and 8(a)(3) of the National Labor Relations Act (NLRA), 29 U.S.C. § 158(a)(1) & (a)(3) (1976), by: (1) interrogating and threatening shop mechanic William Vassalli with regard to his pro-union activities; (2) telling shop employees that management could no longer discuss wages with them if they

voted for union representation; (3) reclassifying shop employees and giving them blanket raises after rumors about union representation; (4) reclassifying Vassalli and reducing his pay after he expressed interest in union representation; (5) imposing a new cleanup policy in the shop only weeks before a scheduled representation election; (6) questioning shop employees concerning their pro-union activities and similar activities of their fellow employees; and (7) discharging shop mechanic Glen Stockwell on April 28, 1981, because of his pro-union activities.

On December 16, 1982, the Board adopted the rulings, findings, and conclusions of an Administrative Law Judge (ALJ), ordering TLC to cease and desist violating the NLRA, to reinstate Stockwell to his former or a substantially equivalent position, to reinstate Vassalli to his position prior to reclassification, to expunge Stockwell's and Vassalli's records as to the illegal adverse personnel actions against them, to make Stockwell and Vassalli whole with respect to lost wages and benefits, to make available records necessary to calculate any backpay owing to them, to sign and post copies of a notice regarding employee rights and company obligations, and to notify the Regional Director of the Board in the future as to steps taken to comply with the Board's order.[1] TLC petitions for review of the Board's order insofar as it relates to Stockwell, and the Board cross-applies for enforcement of the entire order.[2] We deny TLC's petition and grant the Board's application for enforcement.

TLC's petition relies solely on its contention that, under a proper view of the law, the record does not contain substantial evidence to support the Board's finding that Stockwell was discharged because of his pro-union activities. The facts as found by the ALJ are as follows: TLC is engaged in transporting fresh produce and freight in interstate commerce. Stockwell worked for TLC as a mechanic from December, 1979, until April 28, 1981. On February 16, 1981, the president and executive vice president of TLC met with the shop employees to discuss the losses which the company had incurred allegedly because of poor shop operation. At approximately this same time, several employees had been discussing the establishment of a union at the shop and had contacted a representative of District No. 9, International Association of Machinists and Aerospace Workers, AFL–CIO (Union). The TLC executives were unaware of pro-union activities by shop employees at the time of the February 16 meeting. They learned of the union push shortly thereafter, however, including the signing of union cards by Vassalli and Stockwell around February 27.

In early March, several shop employees presented a list of demands to TLC regarding improvements in wages and benefits. The company responded to this demand during the next week by revising its job classification system and giving raises to most shop employees of between $.25 and $1.50. The Union submitted a demand for recognition at about the same time, which TLC refused. The Union then filed a petition for a Board election. On April 7, Vassalli and Stockwell were subpoenaed by the Union to attend a representation hearing at which the company and the Union agreed to a May 12 representation election date. TLC's attorney wrote down the names of the employees present during the hearing.

On April 10, TLC President Tom Lange called a meeting of the first and second

---

1. In a consolidated representation case heard with this unfair labor practice action, the Board ordered the Regional Director for Region 14 to overrule challenges to the ballots of Glen Stockwell, Janet Amsden, James P. ("Pat") Akers, Phil Diller, Julius Renfro, and Steven Seefeldt, to open and count their ballots in determining the results of the May 12, 1981, representation election, and to issue the appropriate certification.

2. TLC does not contest the Board's findings of federal labor law violations except insofar as they relate to Stockwell's discharge. We therefore enforce the Board's order with respect to these uncontested findings without further discussion of their merits. See NLRB v. Douglas & Lomason Co., 443 F.2d 291, 293 (8th Cir. 1971); 29 U.S.C. § 160(e) (1976).

shift shop employees to discuss the advantages and disadvantages of union representation. He expressed concerns about the quality of workmanship in the shop, citing as examples an instance in which a truck transmission had failed and another in which the "pitman arm" in the steering unit of a truck had become loose. Stockwell asked Lange after the meeting whether his work had been a problem to the company, to which Lange replied that "they were having a little [problem] but it was nothing serious."

On April 16 or 17, Lange approached Stockwell and told him that he "had been doing a pretty good job, and * * * ought to keep doing the work that [he] was doing." Lange further stated that he felt that Stockwell "had attitude problems for a while, but he had felt it was taken care of."

Stockwell went on vacation after April 21, 1981, and returned to work on April 27. At the end of the day, Director of Maintenance Russell Zoellner met with TLC Executive Vice President James Burt to discuss some alleged problems with Stockwell's work. Lange joined the discussion, and the men decided to discharge Stockwell the next day.

When Stockwell reported to work on April 28, Zoellner called him into his office and told Stockwell that he was fired. When asked the reasons for the discharge, Zoellner told Stockwell that the quality of his work had deteriorated over the past few months. Specifically, Zoellner cited two incidents: (1) On March 30, 1981, Stockwell worked on a pitman arm in the steering unit of a truck which was found to have come loose some time in mid-April. (2) In January of 1981, Stockwell performed a brake job on another truck which lost its left rear wheel assembly while being driven on April 20. Stockwell told Zoellner that he saw no basis for the discharge and would seek legal counsel or help from the Union to regain his job.

The ALJ concluded that Stockwell's known pro-union activities, the timing of his discharge as it related to the encouraging remarks made by Lange in April, the absence of prior disciplinary action against Stockwell for poor performance, and the pendency of the scheduled representation election gave "rise to an inference and a finding that Stockwell's concerted activity was a motivating factor in [TLC's] decision to discharge him." The ALJ then went on to find that TLC's asserted reasons for Stockwell's discharge—in particular the two specific instances of poor workmanship relied on by Zoellner—were "pretextual" and failed to rebut the inference of discrimination on the basis of activities protected by the NLRA. Finally, the ALJ cited *Wright Line, A Division of Wright Line, Inc.,* 251 N.L.R.B. 1083 (1980), enf'd, 662 F.2d 899 (1st Cir.1981), *cert. denied,* 455 U.S. 989, 102 S.Ct. 1612, 71 L.Ed.2d 848 (1982), in support of its finding that Stockwell's discharge violated subsections 8(a)(1) and 8(a)(3) of the NLRA.

■ The Board, in adopting the conclusions of the ALJ, properly applied a legal test appropriate to a finding of illegal discrimination based on protected concerted activities. In *NLRB v. Transportation Management Corp.,* —— U.S. ——, 103 S.Ct. 2469, 76 L.Ed.2d 667 (1983), the Supreme Court held that the Board's application of the *Wright Line* test in "dual motive" discharge cases was a permissible construction of the NLRA. *Id.* at ——, 103 S.Ct. at 2475, 76 L.Ed.2d at 676. Thus, after the General Counsel carries its burden of persuasion that an employee's protected conduct was a substantial or motivating factor in the discharge of an employee protected by the NLRA, the Board may hold that the burden shifts to the employer to prove the "affirmative defense" that it would have discharged the employee even absent that protected conduct. *Id.* at ——, 103 S.Ct. at 2474, 76 L.Ed.2d at 675.

■ Although we might have reached a different conclusion than the Board on a de novo review of the facts, we hold that the record contains substantial evidence to find TLC liable under the legal test applied by the ALJ and Board herein. First, the ALJ's finding that Stockwell's protected conduct was a substantial or motivating

factor in his discharge is supported by the following facts: The company had knowledge of Stockwell's pro-union activities, especially by virtue of his signing a union card in late February and his attendance on behalf of the Union at the April 7 representation hearing. Additionally, the timing of Stockwell's discharge—only two weeks prior to a scheduled representation election—evinces anti-union motives behind that discharge. Finally, the company reclassified and reduced the pay of another enthusiastic union sympathizer, Vassalli, and counseled other shop employees regarding the disadvantages of union representation just prior to Stockwell's discharge. These facts constitute substantial evidence that Stockwell's protected conduct was at least a substantial or motivating factor in TLC's decision to fire him. *See id.* at ——, 103 S.Ct. at 2475–76, 76 L.Ed.2d at 677.

Secondly, TLC's evidence was insufficient to carry its burden of establishing that it would have discharged Stockwell even absent its proven anti-union motives.[3] The company's evidence regarding Stockwell's alleged connection to the incidents cited by Zoellner is not compelling. As to the pitman arm incident, the record shows that persons other than Stockwell worked on the front end of the truck involved on the same day that he worked on its steering unit. Furthermore, during the weeks between Stockwell's work on that truck and the discovery of the loose pitman arm, the truck could have been driven several thousand miles. As to the faulty left rear wheel assembly, over two months separated Stockwell's association with that truck and the accident attributed to the brake job he performed. In addition to the extensive mileage which could have been put on the truck in the meantime, the ALJ credited Vassalli's testimony that any error by Stockwell in replacing the jam nuts after the brake job should have been manifested within a short-

er period of time. Moreover, the ALJ found that the company presented no evidence indicating that it had a practice of discharging mechanics whose work quality was similar to that attributed to Stockwell. Finally, Lange commended Stockwell for his work in mid-April, and the company gave him no opportunity to rebut the charges against him prior to the April 27, 1981, decision to discharge him. These facts support the Board's conclusion that TLC's asserted reasons for discharging Stockwell were insufficient to establish that he would have been fired absent the proven anti-union animus otherwise underlying his discharge.

For the foregoing reasons, we deny TLC's petition to set aside the Board's order as it relates to Stockwell's discharge and enforce the order in its entirety.

---

**3.** The ALJ referred to the company's asserted reasons behind Stockwell's discharge as "pretextual," indicating that the *only* motive for that discharge was anti-union animus. *See NLRB v. Transportation Management Corp.,* —— U.S. ——, —— n. 5, 103 S.Ct. 2469, 2473 n. 5, 76 L.Ed.2d 667, 674 n. 5 (1983). The ALJ,

however, did cite cases decided on a "dual motive" basis, indicating that some legitimate concerns might also have played a part in the discharge. The record is sufficient to support the conclusions of the Board under either a "dual" or "single" motive analysis.