NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

REXALL CORPORATION, Respondent.

No. 83–1320.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 12, 1983.

Decided Jan. 10, 1984.

William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Rob-ert E. Allen, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, Andrew F. Tranovich, Sue Gunter, Attys., N.L. R.B., Washington, D.C., for N.L.R.B.

D. Michael Linihan, James N. Foster, Jr., Ralph E. Kennedy, St. Louis, Mo., for respondent; McMahon, Berger, Breckenridge, Hanna, Linihan & Cody, St. Louis, Mo., of counsel.

Before LAY, Chief Judge, FLOYD R. GIBSON, Senior Circuit Judge, and BRIGHT, Circuit Judge.

BRIGHT, Circuit Judge.

The National Labor Relations Board petitions for enforcement of its order (265 N.L. R.B. No. 15, October 18, 1982) that Rexall Corporation cease and desist from "threatening employees with possible discharge * * [and] loss of existing benefits if they elect to be represented by Office & Professional Employees International Union, Local 13." Rexall contends that the Board's findings that Rexall violated section 8(a)(1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1), lack the support of substantial evidence on the record as a whole. We reverse one of the Board's two findings of violation, and affirm the other.

I.

At a representation election held on December 19, 1980, the clerical and office employees at Rexall's St. Louis facility voted 53 to 35 not to be represented by the Office & Professional Employees' Local 13 (the Union). The Union filed timely objections with the Board, charging Rexall with thirteen violations of section 8(a)(1). A Board administrative law judge (ALJ) heard evidence in the case, and determined that Rexall had committed a number of unfair labor practices in the course of the election campaign. On review, the Board sustained the ALJ on only two of the findings of violation. Rexall now challenges and we review those two findings.

## A. The Swain Incident.

On December 3, 1980, Swain, Rexall's data processing manager, met with eleven office employees to discuss the union representation campaign. Swain told the employees of the terms and conditions under which Rexall's production and maintenance employees, who were unionized, worked. Specifically, he pointed out that the unionized workers' contract prohibited sympathy strikes, required employees to punch in and out on timeclocks, and subjected them to an "attendance control program" under which absences and tardinesses were grounds for disciplinary action by Rexall against individual employees. Swain made it clear to the employees that he was only describing the terms of the unionized workers' contract, not threatening them with its terms or implying that such terms would automatically or inevitably apply to the office workers if they voted for union representation.

The Board held, contrary to the ALJ, that Swain's remarks to the eleven employees did not constitute an unfair labor practice. "Swaine's [sic] statements were expository in nature," the Board wrote, "and, as such, fell squarely within the ambit of speech protected by section 8(c) of the Act." 265 N.L.R.B. at p. 15.

Immediately after his meeting with the eleven employees, Swain was approached by one of the eleven, Sherry Gillham, who had questions about the attendance control provisions of the production and maintenance workers' contract. Swain and Gillham examined the provisions together, and Gillham came to the conclusion that, had the provisions been in effect among the office workers, Gillham's record of absenteeism would justify her discharge under the contract. Swain specifically denied Gillham's allegations that he remarked that the attendance control program was of special concern to her because of her record of absences, and that he told her she would be discharged for absenteeism if the Union won the election. Even though the ALJ discredited Gillham's testimony generally, and credited Swain's, he held that Swain

had impliedly threatened that Gillham would be discharged under the attendance control program if the office workers elected union representation. The Board affirmed without discussion the ALJ's finding of an unfair labor practice.

We reverse. At the group meeting immediately prior to the conversation with Gillham, Swain made it clear to those present, Gillham among them, that his description of the production and maintenance workers' contract terms was not a threat that similar terms would become part of the office workers' contract if they elected to be represented by the Union. Rather, Swain emphasized that all terms and conditions of employment would be negotiable with Rexall if the Union became the employees' bargaining agent. The Board held these remarks to be protected employer speech, and therefore not a violation of the Labor Act.

We regard Swain's conversation with Gillham as an extension of his earlier discussion with the assembled employees. In the circumstances, we believe that Swain's earlier comments that all terms and conditions would be negotiable if the Union won the election impliedly carried over to the immediately subsequent conversation with Gillham. In the absence of any credible evidence that Swain retracted or negated his earlier comments when he discussed the attendance control program with Gillham, we cannot agree that Swain threatened Gillham with discharge. Swain's failure explicitly to reiterate to Gillham in their private conversation what he had just told the assembled workers—that all terms and conditions of employment would be subject to negotiation if the Union won the election—does not rise to the level of an unfair labor practice.

## B. The Pryor Incident.

On December 16, three days before the election, Linda Pryor, a Rexall supervisor, called the five employees under her supervision to a meeting at which she informed them of the date and time of the upcoming election and admonished them

that a Union victory might mean the loss of some of their current privileges (such as the right to receive personal telephone calls directly, rather than through the central switchboard; the right to report to and leave work early where individual convenience required it; and the right to spend break time anywhere on the premises, rather than in a specifically designated area). The ALJ and the Board refused to credit Pryor's testimony that she also told the workers that all terms and conditions of employment would be negotiable if the Union won the election. The Board affirmed the ALJ's determination that Pryor's remarks constituted a threat of loss of existing benefits if the Union won the election.

Rexall now argues that, since the Board held that similar remarks by Pryor to employees at lunch on December 3 did not amount to a threat of loss of benefits, neither did her December 16 remarks. Rexall overlooks, though, the Board's specific finding that Pryor had said on December 3, but not on December 16, that all terms and conditions would be negotiable if the Union won. The December 16 omission is crucial. Unlike the Gillham incident, where the supervisor's alleged threat was made immediately after, and to an employee who had heard, his cautionary remarks on the negotiability of employment terms, Pryor's December 3 cautionary remarks cannot reasonably be deemed to have impliedly carried over to the December 16 meeting. Substantial evidence supports the Board's determination that Pryor threatened employees at the December 16 meeting with loss of existing benefits. Accordingly, we affirm the Board's finding that Pryor's remarks constituted a violation of section 8(a)(1) and grant enforcement of the Board's order that Rexall cease and desist from making such threats.

## II.

■ The Board's order set aside the results of the December 19, 1980 representation ballot and ordered a new election. As a general matter, an order calling for an election in a representation proceeding is not directly reviewable by the courts of appeals. *Boire v. Greyhound Corp.,* 376 U.S. 473, 478–79, 84 S.Ct. 894, 897–98, 11 L.Ed.2d 849 (1964); *NLRB v. Intertherm, Inc.,* 596 F.2d 267, 278 (8th Cir.1979). Therefore we do not now review the portion of the order which calls for a new election. Rather, we remand the case to the Board for such further proceedings as may be appropriate in light of our decision sustaining one but not the other of the Board's findings of a section 8(a)(1) violation.