**LEMON DROP INN, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 84–5083.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 14, 1984.

Decided Jan. 9, 1985.

J. Dennis O'Brien, Minneapolis, Minn., for petitioner.

Elliott Moore, Dept. of Justice, Washington, D.C., for respondent.

Before HEANEY, ROSS and FAGG, Circuit Judges.

PER CURIAM.

The National Labor Relations Board, affirming a decision of the administrative law judge (ALJ), found that the Lemon Drop Inn, Inc., violated the National Labor Relations Act (N.L.R.A.) (29 U.S.C. § 158(a)(1) and (3)) by threatening to shut down the restaurant if its employees selected a labor organization to be their collective bargaining representative, and by wrongfully discharging two employees, Betty Brock and Jody Griffith, in retaliation for their involvement with the union. On appeal, Lemon Drop argues that the ALJ's factual findings are unsupported by substantial evidence, that the general counsel failed to establish a prima facie case of retaliatory discharge, that the Board erred in finding the employees' discharge was pretextual, and that the Board erred in ordering the remedies of back pay and a new election. Having carefully reviewed the record and having found no error, we affirm.

This dispute arose out of attempts by the Hotel, Motel, Restaurant, Bar and Club Employees Union, in early October, 1980, to organize employees of the restaurant. A month later, the union told the restaurant that it represented the employees; it suggested meeting with management to discuss a contract and offered to have the employees' union authorization cards verified. At about the same time, the union filed a representation petition with the Board. Six weeks later, in mid-December, the Board conducted a representation election at which employees voted 22–22 on the issue of union representation, with an additional vote challenged, that of Jody Griffith.

## I. THREATENED RETALIATORY SHUTDOWN.

Employers who threaten to shut down in response to employee attempts at organization violate Section 8(a)(1) of the N.L.R.A., 29 U.S.C. § 158(a)(1). *N.L.R.B. v. Broyhill,* 514 F.2d 655, 657 (8th Cir. 1975). The violation in this case is supported by testimony that restaurant manager Joel Berg threatened waitress Ruby Cassidy by stating that, if he heard further talk of employee organization, he would close the restaurant and fire the employees.

The petitioner challenges Cassidy's testimony about the threats by introducing work records to show that she could not have worked with the employees she referred to and on the date she mentioned. Cassidy testified, however, that the threatening statement was made "around the end of October," which effectively answers Lemon Drop's attempt to discredit the evidence. We note that Cassidy's testimony was not inconsistent with testimony of another employee who told management of attempts at organization, and we note that similar threats were made before this one. In addition, the ALJ made specific findings regarding Cassidy's credibility which we are bound to affirm if they are supported by the record as a whole. *Fruin-Colnon Corp. v. N.L.R.B.,* 571 F.2d 1017, 1022 (8th Cir.1978). The ALJ also noted that he found manager Berg, who contradicted Cassidy's testimony, to be "consistently * * an untrustworthy witness." Thus, we find substantial support in the record for the Board's decision on this issue.

## II. UNLAWFUL DISCHARGE.

The Board also found that the restaurant unlawfully discharged employees Jody Griffith and Betty Brock for their roles in organizing the restaurant's employees. Retaliatory discharges of this type are proscribed by section 8(a)(3) of the N.L.R.A., which forbids "discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization * * *." 29 U.S.C. § 158(a)(3).

■ We affirm Board determinations when they are supported by substantial evidence on the record as a whole. *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951). In cases like this one, inference of an employer's unlawfulness may be drawn from the employer's hostility toward the union, *McGraw-Edison Co. v. N.L.R.B.*, 419 F.2d 67, 75 (8th Cir.1969), coincidence between the employee's activities and the discharge, *T.L.C. Lines, Inc. v. N.L.R.B.*, 717 F.2d 461, 464 (8th Cir.1983), or the absence of previous warnings or reprimands to the employee. *N.L.R.B. v. Wal-Mart Stores, Inc.*, 488 F.2d 114, 117 (8th Cir.1973). When an employee establishes that his discharge was motivated by his union activities, the employer "may avoid being adjudicated a violator by showing what his actions would have been regardless of his forbidden motivation." *N.L.R.B. v. Transportation Management Corp.*, 462 U.S. 393, ——, 103 S.Ct. 2469, 2474, 76 L.Ed.2d 667, 675 (1983).

■ Our review of the record regarding the discharges of Jody Griffith and Betty Brock confirms that the Board's decision is supported by substantial evidence. The Board found that Griffith had previously been considered a good employee, which was corroborated by his speedy promotion to cook and by his merit-based raise a month before he was fired. That the restaurant exhibited animus against unions is also firmly established by its threat to shut down the business in response to union organizing.

In defense, the restaurant claims ignorance of union-organizing activities. This is contradicted by waitress Sharon Borg's testimony that she told management that Griffith and Cassidy approached her in seeking authorization for the union by employees. The restaurant attacks Borg's credibility by suggesting that she subsequently recanted her testimony and that the managers denied having this knowledge. Again, the ALJ made specific credibility findings which we accept. The ALJ found that Borg was biased in favor of the restaurant and, thus, he declined to credit her equivocation after she had testified that she had implicated Jody Griffith. He also noted that, in equivocating, she failed to explain why she would have omitted mentioning Griffith to the managers, a factor which we find especially significant in light of her initial testimony that she was sure she had mentioned both names, because she closely associated the two at the time.

We also find substantial support in the record for the conclusion that the restaurant's explanation for Griffith's discharge was pretextual. The discharge was abrupt and unexpected, particularly in light of Griffith's previously satisfactory work record. We also note apparent inconsistencies in the restaurant's explanation of the circumstances underlying the discharge which, as another Court has noted, weakens the restaurant's case and buttresses the conclusion that the discharge was motivated by anti-union animus. *N.L.R.B. v. Nevis Industries*, 647 F.2d 905, 910 (9th Cir.1981). Restaurant managers gave inconsistent accounts of the circumstances underlying the decision to fire Griffith, and record evidence also belies the restaurant's claim that Griffith was insubordinate in failing to meet a manager on a specified day. In fact, the day was specified only generally, and Griffith would have been able to comply with the demand within the time specified but for his termination. In light of this evidence, we find no error in the conclusion that the restaurant's explanations were pretextual.

We reach the same conclusion with regard to Betty Brock's termination. As we noted above, the restaurant demonstrated its anti-union animus by threatening a retaliatory shutdown in response to organization of employees. At the hearing, manager Brown testified that he had knowledge of Brock's involvement with the union due to her involvement as a union election observer. The Board found this particularly noteworthy in light of the timing of the discharge in that Brock, alone, was fired five days after having observed the election. *See T.L.C. Lines,* 717 F.2d at 464. ("[T]he timing of [the employee's] discharge—only two weeks prior to a scheduled representation election—evinces anti-union motives behind that discharge.")

We note that the record also supports the ALJ's additional finding that Lemon Drop's economic justification for laying off Brock was pretextual and therefore that Lemon Drop failed to establish that it would have laid off Brock absent her union activity. The evidence suggests that hours worked by hostesses did not fall off precipitously until Christmas week; furthermore, after Brock was fired, other hostesses complained about an increase in their hours, which contradicts Lemon Drop's claim that Brock was laid off for want of work. In addition, the ALJ found that in October, when Lemon Drop claimed its business was declining, it hired eleven new waitresses. This is particularly important in light of the fact that, when Brock was hired, she had been told she might work as a waitress when business declined in the winter.

Thus, in light of the evidence in the record, we find that the ALJ's findings with respect to Brock were correct; the General Counsel proved a *prima facie* case based on knowledge, timing and animus. In addition, the ALJ correctly found that Lemon Drop's economic argument was "another *post-hoc* pretext," and we affirm.

## III. REMEDIES: ELECTION AND BACKPAY.

Lemon Drop argues that, in light of a nineteen month procedural delay in the case, the restaurant's work force has changed, and the Board's order of remedies of backpay and certification of the union is inappropriate.

■ Concerning the certification, the ALJ ordered and the Board affirmed that, if Jody Griffith's disputed ballot is opened, and the union receives a majority, the union will be certified; if the union does not receive a majority, the results of the election will be set aside and a new election shall be held when the Regional Director determines such an election would be fair and free.

We believe that this certification order is not ripe for review at this stage of the proceeding. Although it appears likely that Jody Griffith might have voted for union representation, we cannot determine his choice without opening the ballot. Thus, if we examine the remedial alternatives posed by the Board, we find neither is ripe for review at this time. In the event of a new election, our Court and others have held that "an order calling for an election in a representation proceeding is not directly reviewable by the courts of appeals." *N.L.R.B. v. Rexall Corp.,* 725 F.2d 74, 77 (8th Cir.1984); *Florida Board of Business Regulation v. N.L.R.B.,* 686 F.2d 1362, 1366 n. 8 (11th Cir.1982) ("A Board decision to order a representation election is a non-final order and the district court must ordinarily dismiss, for want of subject matter jurisdiction, employer or labor organization challenges to such a decision." [Citations omitted.]); *N.L.R.B. v. Jacob E. Decker & Sons,* 569 F.2d 357, 359 n. 1 (5th Cir.1978) ("The Board's order that a second election be held is not involved in this petition because it is not an appealable order.").

On the other hand, if the union is certified, the Supreme Court has held that the "final order[s]" made reviewable by §§ 10(e) and (f) in the Courts of Appeals do not include Board decisions in certification proceedings. Such decisions, rather, are normally reviewable only where the dispute concerning the correctness of the certification eventuates in a finding by the Board that an unfair labor practice has been committed as, for example,

where an employer refuses to bargain with a certified representative on the ground that the election was held in an appropriate unit.

*Boire v. Greyhound Corp.*, 376 U.S. 473, 476–77, 84 S.Ct. 894, 896–97, 11 L.Ed.2d 849 (1964) (citation omitted).

In the event that a bargaining order is issued and objected to, and the Board determines that an unfair labor practice charge should be issued, Lemon Drop may request an expedited hearing from this panel.

■ Lemon Drop also argues that reinstatement with backpay is an inappropriate remedy because it is based on impermissible speculation that the reinstated employees would have remained at the Lemon Drop Inn until now. We believe that reinstatement in this case is proper because "it is the only sanction which prevents an employer from benefiting from his unfair labor practices through discharges which may weaken or destroy a union." *Local 833, UAW–AFL–CIO v. N.L.R.B.*, 300 F.2d 699, 703 (D.C.Cir.1962).

Accordingly, the judgment of the Board is affirmed.