**YORK PRODUCTS, INC., d/b/a Mastercraft Casket Company, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 88–2276.**

United States Court of Appeals, Eighth Circuit.

Submitted April 14, 1989.

Decided Aug. 3, 1989.

Rehearing Denied Aug. 28, 1989.

---

Steven E. Marsh, Springfield, Mo., for petitioner.

William A. Baudler, for respondent.

Before BOWMAN and WOLLMAN, Circuit Judges, and ROSS, Senior Circuit Judge.

ROSS, Senior Circuit Judge.

York Products, Inc., d/b/a Mastercraft Casket Co. (Mastercraft), petitions for review of the decision of the National Labor Relations Board (Board), adopting the order of the Administrative Law Judge (ALJ), that Mastercraft violated section 8(a)(1) of the National Labor Relations Act (NLRA), 29 U.S.C. § 158(a)(1). The essence of the charge was that Mastercraft threatened to thin out or terminate employees because of union membership, and violated section 8(a)(1), (a)(3), 29 U.S.C. § 158(a)(1), (a)(3) by discriminatorily failing to recall certain of its employees from layoff due to their union support. The Board has cross-applied for enforcement of the order requiring that Mastercraft cease and desist from threatening its employees and make Priscilla Barber, Chester Golat, and Joseph Marshall whole for any loss of earnings and other benefits plus interest suffered as a result of Mastercraft's discrimination. We affirm the order and grant enforcement.

Although the labor dispute occurred in Ladysmith, Wisconsin, jurisdiction is proper in this circuit under 29 U.S.C. § 160(f)[1] because Mastercraft maintained its corporate headquarters in Springfield, Missouri, and has plants operating in Marshfield and Crane, Missouri.

Mastercraft employees are not represented by a union, but in February 1986, a union organizational campaign began. Mastercraft campaigned against the union. James Ewer, then a Mastercraft supervisor of the paint, hardware, and interior departments, was heard to refer to employee Barber and another union supporter as "trou-blemakers." Numerous employees heard him repeatedly threaten as many as fifty times to close the plant if the union came in. Toward the end of the campaign, Robert Betthauser, President of Mastercraft, described employees Golat (a leader in the union campaign from the beginning) and Marshall as "up [a] creek with no paddle [in] a boat that was sinking fast" because they supported the union. Another supervisor, Raymond Frafjord, told Marshall to stop wearing union buttons if he knew what was good for him. Supervisor Ewer's wife, Florence, also an employee, was heard repeating that Ewer had said that if the union came in, Mastercraft would have a big layoff and switch people around to get rid of some of the "troublemakers," specifically naming Barber. Florence denied making the statement.

Layoffs occurred in March and April 1986, which were justified for economic reasons. Two days before the election, the union filed an unfair labor practice charge against Mastercraft which was later withdrawn. In April the employees voted against unionization. Later that year, in July or early August 1986, employee Barber heard Supervisor Ewer tell his wife that he was planning to lay off employees and "start thin[n]ing out" the union people. Ewer also allegedly said that he had to lay off his wife and daughter-in-law because "the dammed union figured [out] that he was favoring his family." Ewer denied making any statements after March 1986 when he had received a Supervisor's guide book giving instructions on running a campaign against the union. Barber also testified that Ewer made a similar statement in September about cleaning house and throwing a few people out, without specifically mentioning the union. In September 1986, Mastercraft laid off eighty-one hourly workers, including Barber, Golat and Marshall, due to a decline in sales. The lawfulness of the layoff was stipulated. Mastercraft instituted a quality control pro-

1. Section 10(f) of the NLRA provides in relevant part that:
"(f) Any person aggrieved by a final order of the Board * * * may obtain a review of such order in any United States court of appeals in the circuit * * * wherein such person resides or transacts business." 29 U.S.C. § 160(f).

gram, *i.e.,* lower production and higher quality requirements, and only weeks later began to recall its most qualified workers from layoff, recalling sixty-four between October 1986 and February 1987.

Barber had performed satisfactory work while at Mastercraft but was not recalled until April 1987. Another employee with the same seniority status as Barber (considered a good employee by both Mastercraft and Barber) and one with two years less seniority were recalled before Barber to do the same job. Barber, however, had earlier stated that she planned to fake an accident while working, as she had done at a former job, to collect compensation. This report had reached Ewer through a former employee who had a grudge against her, and was entered on Barber's personnel file before September 1986. Mastercraft did not confront Barber with this allegation or investigate it. Barber had been on an extended vacation in Arizona with her husband from December 1986 through March 27, 1987. Mastercraft believed that Barber was unavailable for work from information it received from her daughter, but Mastercraft made no effort to contact her.

Golat, a union campaign leader, had been late for work several times during his employment with Mastercraft, and Mastercraft did not consider him a good employee. Ewer, however, considered him a versatile and adaptable employee who had "helped [him] out a lot." Mastercraft recalled three other employees before Golat. One had been on the job only three weeks, one also had little experience, and a third was recalled because Golat's position had been combined with another position. Mastercraft stated that Golat had refused the new position, but Golat stated that he was never offered the position.

Marshall refused recall in April 1987 after working for Mastercraft for four years. Ewer considered him to be an employee who could be relied upon and had written reference letters for him in 1984 and 1986 describing him as a "very good employee"

who was "competent," "dedicated," "loyal," and "hard-working." Marshall had more seniority or experience than six employees who were recalled or hired before Mastercraft offered to recall him.

An unfair labor practice charge was filed against Mastercraft on January 23, 1987, by Golat and others. Upon a hearing, the ALJ found Mastercraft had violated section 8(a)(1) of the NLRA by threatening to terminate or thin out employees because of their union support and by blaming the earlier layoff on union activity, and section 8(a)(1), (a)(3) of the NLRA by refusing to recall employees because of their union activity. The ALJ also found that the relevant (section 10(b)) period began July 22, 1986.[2] The Board adopted the ALJ's decision and Mastercraft appeals, arguing that the Board's decision is not supported by substantial evidence and that the ALJ improperly placed the burden of proof on Mastercraft to prove it had not violated the Act, in contravention of *NLRB v. Wright Line,* 662 F.2d 899 (1st Cir.1981), *cert. denied,* 455 U.S. 989, 102 S.Ct. 1612, 71 L.Ed.2d 848 (1982).

The Board's findings of fact are conclusive if supported by substantial evidence on the record considered as a whole. 29 U.S.C. § 160(e). The Board's reasonable inferences may not be displaced even if this court might have reached a different view had the matter been before it de novo. On review, this court is bound by the Board's determinations of witness credibility and the weight to be given their testimony, unless the Board's determinations are "shocking to [the court's] conscience." *Beaird–Poulan Div., Emerson Elec. Co. v. NLRB,* 649 F.2d 589, 592 (8th Cir.1981).

The ALJ set forth this test from *Wright Line* at page 13 of its decision:

First, we shall require that the General Counsel make a *prima facie* showing sufficient to support the inference that protected conduct was a "motivating factor" in the employer's decision. Once this is established, the burden will shift

**2.** Section 10(b) of the NLRA provides:
"[N]o complaint shall issue based upon any unfair labor practice occurring more than six

months prior to the filing of the charge." 29 U.S.C. § 160(b).

to the employer to demonstrate that the same action would have taken place even in the absence of the protected conduct.

The test has been approved by the Supreme Court in *NLRB v. Transportation Management Corp.*, 462 U.S. 393, 103 S.Ct. 2469, 76 L.Ed.2d 667 (1983).

■ With regard to the section 8(a)(1) violation, the ALJ found Ewer's statement made in late July or early August that he was planning to clean house and thin out union employees, sufficient evidence to establish a violation. The statement was overheard by Barber; neither Ewer nor his wife specifically contradicted Barber's testimony, although her testimony was uncorroborated. Even without the exact date this statement was made, the ALJ found it fell within the section 10(b) period. The ALJ found Barber's testimony, as well as that of other witnesses who heard Ewer's statements, credible over Ewer's blanket denial. The determination is not shocking to the conscience. *See Beaird–Poulan Div., Emerson Elec. Co., supra.*

Mastercraft argues that such isolated testimony cannot constitute substantial evidence on the record as a whole, referring us to *Broadway Motors Ford, Inc. v. NLRB*, 395 F.2d 337, 340 (8th Cir.1968); *St. Louis Car Division v. NLRB*, 439 F.2d 1145 (8th Cir.1971); and *Banner Biscuit Co. v. NLRB*, 356 F.2d 765, 771 (8th Cir. 1966). The Board responds that Ewer's statement amounts to an outright confession of unlawful motive, eliminating the need to resort to other evidence. *See NLRB v. Globe Products Corp.*, 322 F.2d 694, 696 (4th Cir.1963). Further, the statements by Ewer and other members of Mastercraft management made before the section 10(b) period "shed light on the true character" of events which occurred inside the section 10(b) period. *Machinists Local Lodge No. 1424 v. NLRB*, 362 U.S. 411, 416, 80 S.Ct. 822, 826–27, 4 L.Ed.2d 832 (1960).

Because we agree with the ALJ that the general counsel established that Master-

craft harbored animus against union activists in general, and we accept the Board's credibility determinations, we believe that substantial evidence supports the finding that Mastercraft violated section 8(a)(1) by threatening to terminate employment of union supporters, by threatening a retaliatory shutdown, and by blaming layoffs on the union.

■ To establish a violation of section 8(a)(1), (a)(3), under *Wright Line*, the burden was on the general counsel to show that the employees' union activities were a "motivating factor" in Mastercraft's decision not to recall them. The ALJ found Mastercraft's justifications for failing to recall Barber, Golat, and Marshall both pretextual and shifting. We agree that Mastercraft failed to rebut that its anti-union animus contributed to its decision, or show that it would have taken the same actions in the absence of the employees' union activity. *See Transportation Management, supra*, 462 U.S. at 401, 103 S.Ct. at 2474.

While it is true that Mastercraft recalled some union supporters, we are not satisfied that union activity had no bearing on its decisions regarding Barber, Golat, and Marshall. The Board suggests that Barber's unavailability supplied the "excuse rather than the reason" for Mastercraft's failure to recall her. Further, Ewer admitted that Barber's worker's compensation story was not the reason for Mastercraft's failure to recall her. With regard to Golat, the Board agreed that Mastercraft's recalling of a very new employee because he was "very versatile" was "demonstrable nonsense." Mastercraft initially said Marshall was not recalled because he was too slow but later abandoned this theory when a new position was taken at the hearing.

■ Both implausible explanations and false or shifting reasons support a finding of illegal motivation. *See McGraw–Edison Co. v. NLRB*, 419 F.2d 67, 75 (8th Cir.1969); *Iowa Beef Processors, Inc. v. NLRB*, 567 F.2d 791, 797 (8th Cir.1977). Where an employer's explanation fails to withstand

scrutiny, it is considered pretextual and buttresses the general counsel's prima facie showing of unlawful discrimination. *Lemon Drop Inn, Inc. v. NLRB,* 752 F.2d 323, 325 (8th Cir.1985) (per curiam). Our review of the record confirms that the general counsel presented a prima facie case. *See Ballou Brick Co. v. NLRB,* 798 F.2d 339, 342 (8th Cir.1986) (Board free to draw reasonable inferences as to employer's intent from employer's hostility toward union). We also find substantial support for the conclusion that Mastercraft's explanations have not met or neutralized the prima facie case.

In summation, due to much prior evidence of Mastercraft's anti-union posture and the many factual and credibility determinations involved, we believe the Board's decision is supported by substantial evidence on the record as a whole. Accordingly, the petition for review is denied and the order enforced. *See Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 71 S.Ct. 456, 464–65, 95 L.Ed. 456 (1951); *Ballou Brick Co. v. NLRB, supra,* 798 F.2d at 341.