Raymond J. DONOVAN, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

DIPLOMAT ENVELOPE CORPORATION, a Corporation and Marvin Krassner, individually and as Vice-President of the named Corporation, Defendants.

No. CV 81–1310.

United States District Court, E.D. New York.

June 4, 1984.

Jay S. Berke, U.S. Dept. of Labor Regional Sol., Philadelphia, Pa. by Douglas Weiner, New York City, for plaintiff.

Mark E. Arroll, New York City, for defendants.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

In this action plaintiff, the Secretary of Labor, contends that one Thomas Dugan was discharged by the defendants because Mr. Dugan complained to his union of certain alleged violations of the Occupational Safety and Health Act of 1970 ("OSHA"), 29 U.S.C. Section 651 et seq., and that said discharge violated Section 11(c)(1) of the Act, 29 U.S.C. Section 660(c)(1).[1] Defendants have moved for summary judgment.

**1.** Section 11(c) of the Act, 29 U.S.C. Section 660(c), reads:

(1) No person shall discharge or in any manner discriminate against any employee because such employee has filed any complaint or instituted any proceeding under or related to this chapter or has testified or is about to testify in any such proceeding or because of the exercise by such employee on behalf of himself or others of any right afforded by this chapter.

(2) Any employee who believes that he has been discharged or otherwise discriminated against by any person in violation of this subsection may, within thirty days after such violation occurs, file a complaint with the Secretary alleging such discrimination. Upon receipt of such complaint, the Secretary shall cause such

## I. FACTS

On January 25, 1980, defendant Diplomat Envelope, acting through its Vice-President, defendant Krassner, discharged Mr. Dugan. Defendants contend that Mr. Dugan was discharged because he had twice walked off the job without proper explanation, excuse or permission. Plaintiff contends that Mr. Dugan was discharged because Mr. Dugan on January 25, 1980, complained to his union of certain alleged OSHA violations.

Plaintiff contends that on January 29, 1980 Mr. Dugan telephoned the Department of Labor and complained that he had been discharged because he had reported OSHA violations. In any case, on March 3, 1980, the Department of Labor issued a letter to defendant Diplomat Envelope stating that Mr. Dugan had filed a complaint. Defendants, however, contend that no formal written complaint was filed until March 4, 1980. It should be noted that under 29 U.S.C. Section 660(c)(2) "[a]ny employee who believes that he has been discharged or otherwise discriminated against by any person in violation of this subsection may, within thirty days after such violation occurs, file a complaint with the Secretary [of Labor] alleging such discrimination." Plaintiff Secretary of Labor commenced the instant action in May 1981.

The firing of Mr. Dugan has given rise to a number of proceedings besides the instant action.

Mr. Dugan sought unemployment compensation. On July 10, 1980, following

investigation to be made as he deems appropriate. If upon such investigation, the Secretary determines that the provisions of this subsection have been violated, he shall bring an action in any appropriate United States district court against such person. In any such action the United States district court shall have jurisdiction, for cause shown to restrain violations of paragraph (1) of this subsection and order all appropriate relief including rehiring or reinstatement of the employee to his former position with back pay.

(3) Within 90 days of the receipt of a complaint filed under this subsection the Secretary shall notify the complainant of his determination under paragraph (2) of this subsection.

three hearings, the first of which Diplomat's counsel was unable to attend and unsuccessfully sought to have adjourned, Edward Doberman of the New York State Department of Labor, Unemployment Insurance Administrative Law Judge Section, issued an opinion stating: "claimant was discharged for walking off the job without proper explanation, excuse or permission on two occasions, after having been warned concerning such action following the first such occasion." The ALJ therefore concluded that Mr. Dugan was not entitled to unemployment compensation, and ordered Mr. Dugan to repay $712.00 in benefits he had already received (Mr. Dugan has apparently not complied). The ALJ further stated: "[t]he evidence showed that claimant had not yet been discharged when a vice president of the employer spoke to his union representative. In that conversation, in addition to discussion of claimant's early departures, the union representative repeated claimant's complaint, made to the union representative, about an allegedly faulty gas heater and its consequences. In irritation after being told of that complaint, the employer's vice president made up his mind to discharge claimant. Under these circumstances, claimant could believe that he was actually discharged because of his complaint, even though the vice president may have stated to him that he was discharged for walking off the job." The ALJ therefore concluded that Mr. Dugan had not committed a wilful misrepresentation subject to penalty when he informed the unemployment insurance office that "I complained to the union about a faulty gas heater's fumes and was fired." On November 13, 1980, the New York Unemployment Compensation Appeals Board affirmed the ALJ's decision and adopted his opinion and findings of fact as its own: Mr. Dugan then appealed. On June 18, 1981, the Appellate Division of the New York Supreme Court (Third Department) affirmed the Board's decision.

Shortly after Mr. Dugan was discharged, his union sought arbitration on his behalf. On April 22, 1980, Diplomat, a defendant in the instant action, commenced an action in state court against the union, seeking among other things to prevent arbitration. On or about May 5, 1980, the union filed charges against Diplomat with the National Labor Relations Board, charging unfair labor practices, including refusal to arbitrate. On May 7, 1980, the union removed Diplomat's state court action to the U.S. District Court for the Southern District of New York. On May 11, 1981, the Southern District stayed the action in that court pending a decision by the National Labor Relations Board. On March 4, 1982, an Administrative Law Judge of the National Labor Relations Board ordered Diplomat to arbitrate the discharge of Dugan. An appeal by Diplomat from that order is still pending.

## II. COLLATERAL ESTOPPEL

■ Defendants' first ground for summary judgment is that the finding of the state Unemployment Insurance Administrative Law Judge (affirmed by the Appellate Division) that Mr. Dugan was discharged for walking off the job, has res judicata or collateral estoppel effect in the instant action.

### A. PRIVITY

Plaintiff Secretary of Labor argues that he is not bound by the state proceedings because he was not a party thereto. However, the real party in interest in the instant action is Mr. Dugan. Although the Secretary's ultimate aim in commencing the instant action is not so much to benefit Mr. Dugan personally as to create an atmosphere in which employees in general feel safe in making complaints regarding alleged OSHA violations, the Secretary in the instant action seeks to further this ultimate aim solely through the means of benefiting Mr. Dugan personally. Consequently, it is wholly equitable that the Secretary should be bound by any decision binding upon Mr. Dugan.

### B. EXISTENCE OF PRECLUSION

We find that Mr. Dugan himself (and hence the plaintiff Secretary) is bound by the ALJ's finding (affirmed by the Appellate Division) that Mr. Dugan was dis-

charged for walking off the job without excuse. In *Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982), the Supreme Court held that where a state administrative agency summarily dismisses as meritless a claim for ethnic discrimination in employment, and the agency's ruling is affirmed on appeal by a state court, a federal action based on the same claim is barred. Although *Kremer* dealt with ethnic discrimination, there is no reason why more deference should be paid to state proceedings regarding ethnic discrimination than to other state proceedings. Although in *Kremer* the state administrative agency did not make any findings of fact, the Supreme Court specifically stated that "[t]here is no requirement that judicial review must proceed de novo if it is to be preclusive." 102 S.Ct. at 1897 n. 21. The Court thus acknowledged that if a state administrative agency makes findings of fact which are affirmed on appeal by a state court, the appellant is bound by such findings of fact. Of course, the state proceedings must be consistent with due process in order to be given preclusive effect. 102 S.Ct. at 1897. In the instant case, we see no reason to believe that Mr. Dugan was denied due process in the state proceedings.

Plaintiff argues that the state proceedings cannot be given preclusive effect because of a ruling by Judge Platt dated April 1, 1983. Judge Platt, however, ruled simply that Mr. Dugan's initial attempts to pursue his claim in *arbitration* did not bar the instant action on the ground of election of remedies. Judge Platt's ruling has no bearing upon the preclusive effect of the Appellate Division's *judgment*.

## C. SCOPE OF PRECLUSION

Although the Appellate Division's judgment affirming the ALJ's finding that Mr. Dugan was discharged because he walked off the job should be given collateral estoppel effect against plaintiff, that judgment is not dispositive of all issues raised in this case.

Although the ALJ found that Mr. Dugan was discharged because he walked off the job, the ALJ did not specifically state that this was the *sole* cause for Mr. Dugan's discharge. Indeed, the ALJ stated that Mr. Dugan had complained of an alleged health hazard to a union official, that the official relayed the complaint to Diplomat's vice president, and that "[i]n irritation after being told of that complaint, the employer's vice president made up his mind to discharge claimant. Under these circumstances, claimant could believe that he was actually discharged because of his complaint, even though the vice president may have stated to him that he was discharged for walking off the job." The ALJ therefore concluded that Mr. Dugan had not committed a wilful misrepresentation subject to penalty in telling the unemployment insurance office that he had been discharged because he complained of a health hazard. The ALJ's findings on this point are somewhat unclear. The ALJ may have concluded that Mr. Dugan's alleged complaint was a contributory cause of his discharge, but that since Mr. Dugan's misconduct was also a contributory cause Mr. Dugan was not entitled to unemployment compensation, since a person cannot collect unemployment compensation if he "lost his last employment prior to the filing of the claim through misconduct ...", N.Y. Labor Law Section 593(3). On the other hand, the ALJ may simply have concluded that Mr. Dugan *believed* that his alleged complaint was the cause of his discharge, without reaching any conclusion one way or the other as to whether the alleged complaint was *in fact* a contributory cause of the discharge.

According to Department of Labor regulations, "to establish a violation of section 11(c) [29 U.S.C. Section 660(c) ], the employee's engagement in protected activity need not be the sole consideration behind discharge or other adverse action. If protected activity was a substantial reason for the action, or if the discharge or other adverse action would not have taken place "but for" engagement in protected activity, section 11(c) has been violated." 29 C.F.R. Section 1977.6(b). The Supreme Court has held that the National Labor Relations Board may properly construe section 8(a)(3) of the National Labor Relations Act, 29

U.S.C. Section 158(a)(3), which prohibits the discharge of a worker because of his union activity, as imposing upon an employer whose discriminatory motive has been demonstrated the burden of showing that a discharge would have taken place even in the absence of the discriminatory motive. *National Labor Relations Board v. Transportation Management Corp.*, 462 U.S. 393, 103 S.Ct. 2469, 76 L.Ed.2d 667 (1983). It is quite possible that section 11(c) of OSHA, 29 U.S.C. Section 660(c), imposes a similar burden.

Since the ALJ's opinion is too ambiguous to be dispositive one way or the other of the question of whether discriminatory considerations were a motive for the discharge and whether the discharge would have taken place in the absence of a discriminatory motive, the state proceedings are not dispositive of this case.

The question arises as to whether defendants are bound by the ALJ's finding that Mr. Dugan complained of a health hazard to a union official and that the union official reported this to defendant Krassner prior to Krassner's decision to discharge Dugan. We hold that defendants are not so bound. First, this issue was not litigated before the Appellate Division. The appeal to the Appellate Division was taken by Mr. Dugan, who obviously did not dispute this finding of fact. Consequently, the Appellate Division's judgment has no collateral estoppel effect regarding this finding of fact. The Supreme Court has stated that "[u]nder collateral estoppel, once a court decides an issue of fact or law necessary to its judgment, that decision precludes relitigation of the same issue on a different cause of action between the same parties." *Kremer, supra* at 102 S.Ct. 1889 n. 6. Here, the Appellate Division did not "decide" the issues of fact in question. Although an ALJ did "decide" the issue of fact in question, the ALJ is not a "court". Second, although collateral estoppel effect should on occasion be given even to an unreviewed determination of an administrative agency, "its application to administrative determinations is flexible rather than mandatory." *Sierra Club v. Alexander*, 484 F.Supp. 455, 464 (N.D.N.Y.

1980), *affd.*, 633 F.2d 206 (2d Cir.1980). Factors to be considered in this respect include "the intention of the administrative body and the expectations of the parties before it on the question of finality." *Id.* In the instant case, the ALJ, in determining that Mr. Dugan had not committed a wilful misrepresentation, was concerned with the culpability of Mr. Dugan rather than that of the defendants. There is no reason to suppose that the ALJ intended that preliminary factual determinations reached in the process of resolving the issue of wilful misrepresentation (which was in any case not the central issue before the ALJ) would be binding upon the defendants in an action brought under OSHA's provisions against discriminatory discharge. Further, it is not entirely clear what standards the ALJ used in evaluating evidence regarding wilful misrepresentation. It is quite possible that the ALJ demanded a higher standard of proof of wilful misrepresentation than a mere preponderance of the evidence, and that the factual finding that Mr. Dugan complained to a union official who in turn reported the complaint to Mr. Krassner was not in the ALJ's view based upon a preponderance of the evidence. If so, the ALJ's finding obviously cannot bind the defendants here, since plaintiff must here prove his case by a preponderance of the evidence. Further, there appears to have been serious defects in the ALJ's treatment of defendant Diplomat. In particular, the ALJ held the first hearing on May 5, 1980, despite the fact that Diplomat's counsel had advised the ALJ that he could not attend on that date and had requested an adjournment. Undoubtedly the ALJ's willingness to proceed in the absence of Diplomat's counsel is indicative of the fact that the ALJ did not believe that findings made in the proceeding would be binding upon Diplomat in other proceedings. This is not surprising, since the immediate aim of the proceeding was to determine Mr. Dugan's right to unemployment compensation, and not to affect the interests of Diplomat. While we do not necessarily mean to imply that it would be a violation of due process to treat Diplomat as being bound by the

results of the state administrative proceeding, we do believe that the defects in the ALJ's treatment of Diplomat are additional factors counselling against giving the ALJ's unreviewed findings of fact collateral estoppel effect against the defendants.

## III. PRIOR ACTION PENDING

Defendants' next ground for summary judgment is that there is a prior action pending in the Southern District as well as a prior proceeding pending before the National Labor Relations Board. The essence of this argument was rejected by Judge Platt on November 20, 1981 when he denied defendants' motion for a stay without opinion. We will therefore not reconsider it.

## IV. TIME LIMITATIONS

Defendants' next ground for summary judgment is laches. Defendants note that the plaintiff Secretary of Labor did not commence the instant action until May 1981, over fifteen months after the allegedly discriminatory discharge. Defendants further note that Diplomat has hired a substitute employee in the meantime, that if Mr. Dugan is reinstated Diplomat will have to pay two employees for the same job or fire the substitute employee, and that if Mr. Dugan is granted back pay Diplomat will have to pay Mr. Dugan for a long period during which Mr. Dugan was not in fact working and during which Diplomat was paying other persons for performing the work previously performed by Mr. Dugan. Further, defendants argue that had this action been commenced earlier, Diplomat would not have opposed the granting of unemployment compensation to Mr. Dugan, as such compensation would mitigate damages.

Related to defendants' defense of laches is the defense that this action is time-barred by 29 U.S.C. Section 660(c)(2), which provides that "[a]ny employee who believes that he has been discharged or otherwise discriminated against by any person in violation of this subsection may, within thirty days after such violation occurs, file a complaint with the Secretary alleging such discrimination." Defendants contend that although Mr. Dugan allegedly complained to the Department of Labor in a telephone conversation on January 29, 1980, no formal complaint was filed until March 4, 1980, thirty-nine days after the date of the allegedly discriminatory discharge of January 25, 1980.

■ We find that this action is not barred by laches. Although this action was not commenced until May 1981, defendants were on notice of the existence of Mr. Dugan's claim that he was discriminatorily discharged as of March 3, 1980, when the Department of Labor sent Diplomat a letter notifying Diplomat of the charges. Although it is certainly unfortunate that the Secretary took such a long time to determine to commence this action, we cannot say that defendants have been so severely prejudiced by the delay as to render the commencement of this action inequitable.

■ We find that this action is not barred by the thirty-day time limitation of 29 U.S.C. Section 660(c)(2). First, the time limitation of 29 U.S.C. Section 660(c)(2) is a new defense not previously raised by defendants in their amended answer filed November 22, 1983. It would be inequitable to permit defendants to raise this defense at this late date, and defendants should therefore be treated as having waived this defense. Second, the defense is extremely petty, since (even leaving aside the allegation that Mr. Dugan orally notified the Department of Labor of his complaint four days after the allegedly discriminatory discharge), a formal written complaint was certainly filed by March 4, 1980, thirty-nine days after the alleged discrimination, and only nine days beyond the thirty-day period. Third, it is not clear that the time limitation in question creates a right in favor of the employer. It may well be that the time limitation is designed solely for the benefit of the Secretary, to protect the Secretary from the necessity of having to investigate claims which he regards as stale. *But see Powell v. Globe Industries*, 431 F.Supp. 1096, 1100 (N.D.Oh.1977) (dictum).

## V. COMPLAINT TO UNION AS PROTECTED ACTIVITY

■ Defendants' next ground for summary judgment is that plaintiff has failed to state a claim on which relief can be granted. Specifically, defendants argue that since Mr. Dugan did not complain of a health hazard to the Department of Labor prior to his discharge, and since it is merely alleged that Mr. Dugan complained to his union, 29 U.S.C. Section 660(c)(1) does not provide a cause of action. The statute reads:

> No person shall discharge or in any manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter or has testified or is about to testify in any such proceeding or because of the exercise by such employee on behalf of himself or others of any right afforded by this chapter.

We begin by noting that, if the statute is interpreted literally, defendants' position would appear to be correct. An employee who complains to his union of an alleged health hazard has not "instituted any proceeding", and has not "exercised any right" explicitly granted by OSHA. Further, such an employee has not "filed any complaint" with a government entity, these being the only types of "complaints" discussed in the statute.

Nevertheless, we hold that an allegation that an employee was discharged for reporting an alleged health hazard to his union states a claim for which relief may be granted under 29 U.S.C. Section 660(c)(1). We must look to the purpose of the statute rather than at its language alone. The purpose of the statute is to encourage employees to come forward with complaints of health hazards so that remedial action may be taken. In the ordinary course of events, an employee who notices a health hazard will begin by bringing the matter to the attention of those with whom he deals directly in his daily worklife, such as the employer, supervisors, co-workers, or union officials. This is simple common sense. These persons are the ones most likely to be in a position to obtain information regarding the alleged hazard and to take appropriate action. It would be foolish to invoke the ponderous mechanisms of government to remedy a problem without first attempting to resolve the problem through voluntary means. If employers have a right to fire an employee who complains to his union or other non-governmental entity but have no right to fire an employee who complains to a governmental entity, many absurd results will follow. First, employees who complain to non-governmental entities about health hazards will be unjustly discharged. Second, many employees will be discouraged from raising any complaint whatsoever, thereby undermining the enforcement of the statute. Third, some employees will go directly to the government, thereby initiating costly and time-consuming proceedings to remedy problems which would easily have been remedied through voluntary action. Defendants have offered no reason why an employer should be given the right to discharge an employee who complains of health hazards to a non-governmental entity. The only motives we can imagine for advocating such a right would be an excessively rigid committment to the rights of private property or a lack of faith in the ability of the judicial system to expeditiously and fairly resolve complaints of discriminatory discharge. Congress, however, in explicitly stating that employees may not be discharged for reporting health hazards to governmental entities, decided that the rights of private property must yield somewhat to the public interest in promoting health and safety, and that any disadvantages from litigation concerning discriminatory discharge were outweighed by the advantage of encouraging enforcement of national safety and health standards through the mechanism of employees coming forward with complaints of alleged violations. Given this congressional decision, we see no reason why complaints to governmental entities should be distinguished from complaints to non-governmental entities.

Our holding is fully supported by the applicable case law. In *Donovan v. R.D.*

*Andersen,* 552 F.Supp. 249, 66 A.L.R.Fed. 644 (D.Kansas 1982), an employee's communication with a newspaper concerning job safety and health hazards was held to be a protected activity under 29 U.S.C. Section 660(c)(1). In *Phillips v. Interior Board of Mine Operations Appeal,* 500 F.2d 772 (D.C.Cir.1974), the court held that an employee's reporting of safety hazards to his employer is a protected activity under Section 110(b)(1) of the Coal Mine Health and Safety Act, 30 U.S.C. Section 820(b)(1), a provision virtually identical with the OSHA provision we are considering here. In *Marshall v. Springville Poultry Farm, Inc.,* 445 F.Supp. 2 (M.D.Pa. 1977), the court held that a complaint to an employer is protected under OSHA, a position supported by the regulations, 29 C.F.R. Section 1977.9(c). In *Dunlop v. Hanover Shoe Farms,* 441 F.Supp. 385 (M.D.Pa.1976), the court held that an employee's decision to retain counsel to represent him in his attempt to rectify what he believed to be unsafe conditions was protected activity under OSHA.

## VI. CORPORATE OFFICER AS APPROPRIATE DEFENDANT

■ Defendants' next contention is that summary judgment should be granted in favor of Diplomat's vice president, on the ground that the statute authorizes a claim only against the employer itself and not against the employer's officers. This contention is easily disposed of. The relevant provisions, 29 U.S.C. Section 660(c)(1), (2) use the term "person", not "employer". Since the statute contains separate definitions for "person" and "employer", 29 U.S.C. Section 652(4), (5), it is clear that the defendant in an action under 29 U.S.C. Section 660(c) need not be an employer. *See* 29 C.F.R. Section 1977.4. Of course, the primary remedies for discriminatory discharge set forth in 29 U.S.C. Section 660(c)(2), reinstatement and back pay, would appear to be designed for relief against an employer. However, 29 U.S.C. Section 660(c)(2) states that the district court may "order all appropriate relief ..." We cannot rule out the possibility that damages might under some circumstances be appropriately imposed upon an employer's officer responsible for a discriminatory discharge.

## VII. MITIGATION OF DAMAGES

■ Defendants' next contention is that this Court should grant at least partial summary judgment by limiting the period for which back pay may be awarded to a reasonable period following the discharge. Upon examining all papers submitted, we conclude that there is a genuine factual dispute as to whether Mr. Dugan acted to mitigate damages by diligently seeking employment. The issue of mitigation of damages should therefore be left for trial.

■ Defendants also contend that any damages recovered should be offset by (1) money earned by Mr. Dugan since his discharge; (2) money initially received by Mr. Dugan as unemployment compensation which Mr. Dugan has illegally failed to return despite the fact that his claim for unemployment compensation was ultimately denied; (3) money received by Mr. Dugan from the union annuity fund. It is undisputed that money earned by Mr. Dugan since he was discharged operates as an offset. If, however, defendants are found liable, we see no reason why defendants should profit at the expense of the State of New York or the union's annuity fund; rather, the Court should direct that a portion of the damages otherwise payable to Mr. Dugan should be payed to the State and the union annuity fund.

## VIII. MATERIAL CONSIDERED ON MOTION FOR SUMMARY JUDGMENT

One final note is in order. Plaintiff did not submit any affidavit in opposition to defendants' motion for summary judgment, but did submit a memorandum of law in which plaintiff relied upon Mr. Dugan's depositions to establish the existence of a genuine dispute as to material facts. Defendants argue that Rule 56(e) of the Federal Rules of Civil Procedure requires that affidavits be submitted, that only material admissible in evidence may be considered

on a motion for summary judgment, that Mr. Dugan's depositions would not be admissible in evidence because Mr. Dugan is available to testify, that Mr. Dugan's depositions may therefore not be considered, and that summary judgment should therefore be granted to defendants. Defendants also contend that plaintiff does not cite specifically those portions of the depositions on which he relies.

■ Contrary to defendants, Rule 56 does not require the submission of affidavits. Under Rule 56, a party may rely in whole or in part upon depositions, even if the deponent is available to testify. Rule 56(c) provides that "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c) thus permits reliance in whole or in part upon depositions. Although Rule 56(e) sets forth standards which affidavits must meet, Rule 56(e) does not preclude a party from relying in whole or in part upon depositions which meet the same standards. Rule 56(e) provides that affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to matters stated therein." Although Rule 56(e) requires that affidavits (and, by implication, depositions) "shall set forth such facts as would be admissible in evidence ...", it does not follow that the affidavits or depositions must *themselves* be admissible in evidence or that they can only be considered if the affiant or deponent is unavailable to testify. All that is required is that the affiant or deponent make statements which *would* be admissible in evidence if given as testimony. The very purpose of summary judgment is to determine if a trial is necessary, by permitting persons to submit written documents, documents which *themselves* would not be admissible in evidence at trial but which contain statements which would be admissible if made at trial. For example, if a depo-

nent states that he overheard another person make a statement, and the deponent would not be allowed to testify at trial as to what the other person said because of the rule against hearsay, the deponent's statement may not be considered on a motion for summary judgment. By contrast, if a deponent makes statements which the deponent would be perfectly free to make as a witness at trial, the statements may be considered on a motion for summary judgment notwithstanding the fact that the deposition would *itself* be inadmissible under the rule against hearsay. *See* Moore's Federal Practice Sections 56.02(9), 56.11(1.3).

As for defendants' contention that plaintiff has not indicated the material relied upon with specificity, examination of defendants' own moving papers shows that Mr. Dugan testified at his deposition that he complained of a health hazard to a union official prior to his discharge, Dugan Deposition, p. 133 (June 10, 1982), and that Mr. Dugan testified at the state proceeding that the vice president, prior to discharging him, upbraided him for complaining to the union. Transcript of Unemployment Compensation Hearing, p. 35 (May 21, 1980). Transcripts of administrative proceedings may be considered on a motion for summary judgment. Moore's Federal Practice Section 56.11(1.8).

## IX. CONCLUSION

For the above reasons, it is

ORDERED, that defendants' motion for summary judgment is denied; and it is further

ORDERED, that the following matters shall not be deemed in controversy at trial:

(1) Mr. Dugan was discharged at least in part because Mr. Dugan walked off the job without proper explanation, excuse or permission on two occasions, after having been warned concerning such action following the first such occasion;

(2) Mr. Dugan, following his discharge, earned at least $400.00.