INTERNATIONAL HAT
COMPANY, Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

No. 84–1602.

United States Court of Appeals,
Eighth Circuit.

Submitted March 13, 1985.

Decided Sept. 4, 1985.

Lynn Chipperfield, St. Louis, Mo., for petitioner.

Margaret Bezou, Washington, D.C., for respondent.

Before McMILLIAN, Circuit Judge, HENLEY, Senior Circuit Judge, and FAGG, Circuit Judge.

FAGG, Circuit Judge.

International Hat Company (Company) appeals from the decision of the National Labor Relations Board which held that it violated Section 8(a)(1) and (3) of the National Labor Relations Act (Act). 29 U.S.C. § 158(a)(1) and (3). The Board found that in response to an employee's union activities, the Company "sought to punish him by reducing" his pay rate to a level which substantially decreased his income "for the purpose of discouraging union membership and activity by its employees." On appeal, the Company argues that the Board failed to consider evidence offered by the employer which indicated a legitimate business motive for the rate change. We agree that the Board erred in failing to consider this evidence.

The Company manufactures hats at several plants in Missouri. Tex Barnes works as a "cutter" at the Company's plant in Piedmont, Missouri. Barnes was also a leader at the plant in an attempt to organize a union. When the union finally won a certification election in April of 1980, Barnes served on the union's negotiating committee. The union, however, subsequently lost an election, and it was decertified on March 4, 1982. Barnes campaigned extensively in support of the union prior to the election.

Barnes' union activities were not popular with the Company and Company officials discussed ways in which to get rid of Barnes. One Company official suggested that the best way to make Barnes leave the Company was to "hurt him financially."

During this period of union activity the Company suffered substantial losses due to a decline in the hat business. In order to increase its sales from the Piedmont plant, the Company entered the "ad specialty" market. In this market the manufacturer places a company or product name on the hat. The change in market emphasis resulted in higher manufacturing costs to the Company, because the orders were smaller and each order required the Company to place a different name on the hat.

Jim McGlynn, a cost accountant for the Company, began searching for ways to cut production costs. McGlynn discovered that there was a substantial waste of discarded material due to the cutting method at the Piedmont plant. To reduce this waste, McGlynn decided that all materials should be "bulk cut" rather than cut "per order." This method consisted of cutting larger spreads of material in contemplation of future orders and storing the excess material.

Barnes was the only cutter at the Piedmont plant. His rate of pay under the "per order" method was based on a piece rate schedule which set different rates depending on the particular pattern that was being cut. Under the bulk cutting method, McGlynn determined that it would be impractical to pay Barnes on the basis of the

piece rate schedule, because the production of "ad specialty" hats at the Piedmont plant would generate an unworkable multiplicity of rates. McGlynn determined that it would be more efficient to set one rate for the cutter based on how many cuts he produced.

After reviewing Barnes' income and production records for July of 1982, McGlynn set Barnes' rate at a level he thought would be close to and perhaps greater than his previous income. Because the cutting operation had been modified to an extent, McGlynn could not determine precisely how many cuts Barnes could produce. Therefore, McGlynn set Barnes' new rate on a temporary basis to be reviewed at a later time. The new rate went into effect on November 29, 1982, more than eight months after the decertification election. Barnes' income decreased, and he filed an unfair labor practice charge approximately five weeks later.

The Administrative Law Judge found that the Company implemented the change in the cutting method at the Piedmont plant in order to decrease Barnes' income "to the point he would be required to quit." On appeal, the Board held that Barnes' rate of pay under the bulk cutting method was intentionally set at a low level to discourage union activities. The Board, however, decided that it was "unnecessary to pass on the legitimacy" of the change in the cutting method at the Piedmont plant.

■ In a dual-motive case such as this one, when the Board issues a complaint alleging that an employer has taken adverse action against an employee because of his union activities, "the employer may assert legitimate motives for his decision." *NLRB v. Transportation Management Corporation*, 462 U.S. 393, 394–95, 103 S.Ct. 2469, 2471, 76 L.Ed.2d 667 (1983). Evidence that the action would have taken place independently of the employee's protected conduct becomes an "affirmative defense" to the unfair labor practice. *Id.* at 402, 103 S.Ct. at 2475.

■ Under this analysis, the Board requires that the General Counsel carry the burden of showing that the employee's protected conduct was a substantial or motivating factor in the employer's decision. An employer can nevertheless "avoid being adjudicated a violator" if the employer establishes by a preponderance of the evidence that the same action would have taken place even in the absence of the protected conduct. *Id.* at 401, 103 S.Ct. at 2474; *DeQueen General Hospital v. NLRB*, 744 F.2d 612, 615–16 (8th Cir.1984).

■ There is substantial evidence on the record as a whole to support the Board's initial determination that Barnes' union activities were a motivating factor in the Company's action. The Company claims, however, that the change in the cutting method at the Piedmont plant actually precipitated the change in Barnes' pay rate. Hence, the Company presented evidence that its challenged action would have occurred for a legitimate business reason irrespective of Barnes' union activities. In deciding that the Company's anti-union sentiments toward Barnes were the motivating factor in changing Barnes' pay rate, the Board failed to consider this evidence.

Applying the rule of *Transportation Management*, we conclude that before the Board makes a final determination that the Company violated the Act, it must consider whether the change in Barnes' pay rate would have occurred in the absence of his union activities based on the implementation of the bulk cutting method at the Piedmont plant. Accordingly, we vacate the Board's order and remand the case back to the Board for consideration of the evidence presented by the Company in support of its action.

Vacated and remanded.