875 F.2d 315
 131 L.R.R.M. (BNA) 2528
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
JENNINGS AND WEBB, INC., Respondent.
 No. 88-2146.
 United States Court of Appeals, Fourth Circuit.
 Argued: March 7, 1989.
Decided: May 23, 1989.
 
 Asa Ambrister (George V. Gardner, on brief), for petitioner.
 Marilyn O'Rourke Athens (Rosemary M. Collyer, General Counsel; Robert E. Allen, Associate General Counsel; Aileen A. Armstrong, Deputy Associate General Counsel; Peter Winkler, Supervisory Attorney, National Labor Relations Board, on brief), for respondent.
 Before SPROUSE, Circuit Judge, BUTZNER, Senior Circuit Judge, and JOSEPH H. YOUNG, United States District Judge for the District of Maryland, sitting by designation.
 PER CURIAM:
 
 
 1
 This is a petition by the National Labor Relations Board for enforcement of its order compelling Jennings & Webb, Inc., to reinstate two of its employees, David Armentrout and Robert Persinger, and to rescind a no-solicitation rule. Jennings & Webb, Inc., 288 N.L.R.B. No. 76. Jennings & Webb concedes that it violated sections 8(a)(1) and (a)(4) of the National Labor Relations Act, 29 U.S.C. Secs. 158(a)(1) and (a)(4), in responding to a union organizing campaign and in discharging Armentrout but contends that there is not substantial evidence to sustain the Board's finding that it violated sections 8(a)(1) and (a)(3) in discharging Persinger. Enforcement is granted.
 
 
 2
 Jennings & Webb is a small trucking company with approximately twenty-five truck drivers and five checkers. Its sole customer is the West Virginia Pulp and Paper Company ("Westvaco"). The company's contract with Westvaco calls for it to move tractors loaded with large rolls of paper from the Westvaco plant in Covington, Virginia, to an area outside the plant where the trailers are parked until they are picked up and driven by drivers of other trucking companies to their ultimate destinations.
 
 
 3
 Although a union organizing campaign at Jennings & Webb failed in 1983, some of the company's employees again discussed joining a union in the Spring of 1985. Between June 7 and June 14, Persinger distributed union authorization cards which he had received from Teamsters Local Union No. 171 and obtained the signatures of a majority of Jennings & Webb's employees. Between June 7 and July 30, the date of the representation election, Jennings & Webb repeatedly interrogated its drivers, particularly Armentrout and Persinger, concerning their possible support for the union. One of the owners informed Persinger that there would never be a union at the company and later reduced his scheduled working time. The secretary-treasurer of the company, who was the wife of one of the owners, told Armentrout's wife that she had advised her husband to get rid of Persinger because he was a union troublemaker. She later queried Mrs. Armentrout about her husband's plans for voting in the union election and solicited his vote for the company. She also requested that Mrs. Armentrout provide information concerning any talk among employees regarding the union. After Armentrout was seen at the representation hearing on July 16 with other union sympathizers, he was discharged.
 
 
 4
 The representation election was held on July 30.* Immediately after the election, one of the company owners removed union letters from an employee bulletin board, and both owners verbally chastised Persinger, one of them stating "whoever is putting this * * * * in my truck had better give their heart and soul to God because their * * * is mine." The company also promulgated and promoted a no-solicitation rule prohibiting all verbal and written solicitations, including solicitations for labor organizations, during work time and issued warnings to Persinger and David Armentrout's brother for violating that rule. Prior to this incident, solicitations during work time for other purposes were freely permitted.
 
 
 5
 Robert Persinger was discharged on October 1, 1985. The company contends, however, that Persinger's discharge was caused by his misconduct in two instances. In August of that year, Persinger refused to pull a loaded trailer from the Westvaco plant, stating that it was unsafe and insisting that it be reinforced in accordance with safety standards. The Westvaco supervisor in charge of the loading reported the incident to Jennings, one of Jennings & Webb's owners, who went to the scene and ordered Persinger to pull the load. Persinger complied. Afterwards, he and Jennings engaged in an argument concerning the union.
 
 
 6
 The second incident occurred on September 30, while Persinger was engaged in the normal work activity of transferring loaded trailers from the dock to the parking area. According to his testimony, the radio was only partially operating--he could hear the Westvaco supervisor but could not reply to him. Persinger also testified that, instead of going directly to the Westvaco dock, he proceeded to another dock and hooked up another trailer, stopping along the way at a "convenience" grocery store. The Westvaco supervisor called Jennings, advising him of the problem, and Jennings, as was customary in these situations, came to the site. He encountered Persinger pulling into the trailer lot, who upon being questioned, advised Jennings that he had stopped at a 7-11 convenience store and picked up a pint of milk. Jennings gave Persinger a portable radio, and Persinger continued working. The next day, the Westvaco loading supervisor complained to Jennings & Webb about the events of the previous night and about his inability to locate Persinger. Persinger was discharged that evening.
 
 
 7
 We are of the view that substantial evidence in the record supports the Board's findings that the company violated sections 8(a)(1) and (a)(3) in discharging Persinger because of his union activities. Where an employer's opposition to union activity is shown to be a motivating factor in a decision to discharge an employee, the employer may be found by the Board to have violated the Act unless the employer demonstrates that the discharge would have taken place even in the absence of the protected activity. NLRB v. Transportation Management Corp., 462 U.S. 393, 401-03 (1983); NLRB v. Nueva Engineering, Inc., 761 F.2d 961, 967 (4th Cir.1985). The company acknowledges this principle but argues, in effect, that Persinger's misconduct during the incidents in early August and on September 30 were so flagrant and that Westvaco's objection to him was so obvious that the evidence can only be interpreted to find that he would have been discharged regardless of his union activities. We disagree.
 
 
 8
 The evidence of the company's hostility towards its employees' union activities and its hostility directed towards Persinger because of his union activity is so overwhelming that it requires little discussion. For that matter, Jennings & Webb's admitted wrongful discharge of Armentrout lends "aroma to the context in which the ... issues [concerning Persinger] are considered." NLRB v. Clark Manor Nursing Home Corp., 671 F.2d 657, 660 (1st Cir.1982). Considered as a whole, the record demonstrates more than substantial evidence to support the Board's finding that the company would not have discharged Persinger absent his protected union activities.
 
 
 9
 In view of the above, the petition for enforcement is granted.
 
 
 10
 PETITION GRANTED.
 
 
 
 *
 The result of this election had not been certified as of the date of the allegedly discriminatory actions in this case because five ballots, whose votes would determine the outcome, had been challenged