104 F.3d 354
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
10 ELLICOTT SQUARE COURT CORP., d/b/a Ellicott Development
Corp., Petitioner-Cross-Respondent,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent-Cross-Petitioner.
 Nos. 96-4025, 96-4047.
 United States Court of Appeals, Second Circuit.
 Nov. 13, 1996.
 
 1
 FOR PETITIONER: Daniel P. Forsyth, Buffalo, NY.
 
 
 2
 FOR RESPONDENT: Vincent J. Falvo, N.L.R.B., Washington, DC.
 
 NLRB
 
 3
 ORDER ENFORCED.
 
 
 4
 Before MESKILL, McLAUGHLIN, Circuit Judges, and BLOCK,* District Judge.
 
 SUMMARY ORDER
 
 5
 This cause came on to be heard on the transcript of record from the National Labor Relations Board and was argued.
 
 
 6
 ON CONSIDERATION WHEREOF, it is hereby ordered, adjudged, and decreed that the Decision and Order of the National Labor Relations Board be and it hereby is ENFORCED.
 
 
 7
 The lengthy factual background of this matter is set forth in detail in the Decision and Order of the National Labor Relations Board ("NLRB"), Nos. 3-CA-18734, and 18735, dated January 31, 1996. The NLRB brought a complaint against 10 Ellicott Square Court Corp. ("the Company") for violating the National Labor Relations Act ("the Act"), 29 U.S.C. § 151, et seq., because its President, Carl Paladino, committed certain acts against Lisa and Michael Walden ("the Waldens") for their involvement in the Service Employees Local 200C ("the Union"). Familiarity with the facts is assumed.
 
 
 8
 1. Reneging on the Collective Bargaining Agreement: As a preliminary matter, the Company does not contest the Board's determination that the Company violated the Act when it reneged on the collective bargaining agreements to retaliate against the Union for its attempt to refile an unfair labor practice charge. The company has thus waived any objection to those findings, and the NLRB's order regarding those charges is enforced. See NLRB v. Springfield Hosp., 899 F.2d 1305, 1308 n. 1 (2d Cir.1990).
 
 
 9
 2. Standard of Review: The NLRB's decision, adopting the ALJ's decision, must be upheld if supported by substantial evidence. Kinney Drugs, Inc. v. NLRB, 74 F.3d 1419, 1427 (2d Cir.1996). " 'Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Id. (quoting Local One, Amalgamated Lithographers of Am. v. NLRB, 729 F.2d 172, 175 (2d Cir.1984)). That this court could draw conclusions different from those drawn by the agency, does not imply that the decision is not supported by substantial evidence. Id. "When the NLRB's findings are 'based on the ALJ's assessment of the credibility of witnesses, they will not be overturned unless they are hopelessly incredible or they flatly contradict either the law of nature or undisputed documentary testimony.' " Id. (quoting NLRB v. Gordon, 792 F.2d 29, 32 (2d Cir.), cert. denied, 479 U.S. 931 (1986)).
 
 
 10
 3. The Interrogation of the Waldens: The Company argues that the Board's decision that the Company violated the Act by interrogating the Waldens about protected activities was not supported by substantial evidence. We disagree.
 
 
 11
 Generally, interrogation is not considered an unfair labor practice unless it meets certain "fairly severe standards," including: (1) whether there is a history of employer hostility and discrimination; (2) the nature of the information sought, i.e., did the employer seek information on which it would base action against employees? (3) the rank of the questioner; (4) the place and method of interrogation; and (5) the truthfulness of the reply. See Bourne v. NLRB, 332 F.2d 47, 48 (2d Cir.1964) (per curiam). These five factors are not exclusive. See Retired Persons Pharmacy v. NLRB, 519 F.2d 486, 492 (2d Cir.1975).
 
 
 12
 Reviewing the Bourne factors, while there was no history of discrimination, the information sought was of the type which Paladino could use against the Union or the employees; the questioning was conducted by the highest official in the company, in his office; there was a hostile, accusatory tone to the questions and a smattering of profanity. While the Waldens answered the questions truthfully, we conclude that there is substantial evidence supporting the NLRB's conclusion that the atmosphere was sufficiently coercive to constitute illicit interrogation in violation of the Act.
 
 
 13
 4. Lisa Walden's Pay Raise: The Company argues that the Board's finding that the Company violated the Act by denying Lisa a raise was not supported by substantial evidence. Again, we disagree.
 
 
 14
 It is an unfair labor practice under Section 8(a)(3), 29 U.S.C. § 158(a)(3), for an employer to discriminate "in regard to ... tenure of employment ... to ... discourage membership in any labor organization." Hence, an employer violates the Act by discharging or disciplining an employee for engaging in union activity. See NLRB v. Transportation Mgt. Corp., 462 U.S. 393, 398 (1983). The NLRB must demonstrate that anti-union animus contributed to the employer's decision. The employer, however, can avoid this conclusion by illustrating that the employee would have been disciplined for permissible reasons even if he had not been involved with the union. See id. at 401-03. An inference of anti-union animus is "proper when the timing of the employer's actions is 'stunningly obvious.' " NLRB v. American Geri-Care, Inc., 697 F.2d 56, 60 (2d Cir.1982), cert. denied, 461 U.S. 906 (1983).
 
 
 15
 Paladino's failure to give Lisa a raise in the midst of his objections to Lisa's choice as steward at a building at which she did not work, and his questioning of Mike regarding steward pay, provide "substantial evidence" supporting the Board's determination that the Company discriminated against Lisa for union activities. Paladino showed disdain for her selection as Union representative, and the denial of the raise followed closely upon his expression of ill-will. Furthermore, Paladino shifted his position, at first slating Lisa for a raise, and then, in the midst of his troubles with the Union, deciding not to give Lisa any raise at all. Finally, the ALJ was convinced that Paladino's attempt to assign legitimate explanations for his decision were "contrived," "contradictory," and "inconsistent"--credibility determinations that are entitled to great deference.
 
 
 16
 We conclude that there is substantial evidence supporting the NLRB's decision as it pertains to violations of the Act for failure to give Lisa Walden a pay raise.
 
 
 17
 5. Lisa Walden's Suspension and Termination: The Company argues that the Board's finding that the Company violated the Act by suspending and terminating Lisa was not supported by substantial evidence. We disagree.
 
 
 18
 The Board concluded that, given its analysis "concerning the denial of Lisa's pay raise[,] ... it is appropriate to conclude ... that a motivating factor in [the Company's] action in suspending Walden on June 30, still in the midst of [the Company's] dispute with the Union, was Walden's protected conduct of being selected as shop steward." Paladino also became outraged because of Lisa's mother's interference in the issue of whether Michael was entitled to jury pay. The Board stated that Paladino's reaction to Lisa's mother "was directly related to the shop steward issued [sic], as well as his dispute with the Union concerning the refiling of the charges." The Board reasoned that the extension of Lisa's suspension also violated the Act because it was based, in part, on the initial suspension, and because "the timing of this suspension in the midst of [the Company's] disputes with the Union, and Paladino's antagonism towards the Union and towards Lisa Walden for her selection as shop steward [and her mother's involvement in Michael's jury pay problem] is more than sufficient to prove that" anti-union animus was the real reason for the extension of her suspension. The Board concluded that Lisa's termination also violated the Act because it was based, in part, on the suspensions, and because Paladino's comments, "coupled with his unlawful interrogations of both Michael and Lisa, as well as the timing of the termination, are more than sufficient to establish that Lisa's protected conduct was a motivating factor in her discharge."
 
 
 19
 There is no question that Paladino had difficulties with the Union, that he told Lisa he did not find her election as steward at a building at which she did not work justified, and that he found her mother's interference bothersome. The suspension and termination were close in time to Paladino's comments regarding Lisa's election as Union steward, and, as mentioned, "[a]n inference of anti-union animus is proper when the timing of the employer's actions is 'stunningly obvious.' " American Geri-Care, 697 F.2d at 60. The general anti-union animus that pervaded Paladino's dealings with the Waldens and the Union also lend support to the conclusion that Lisa's suspension and termination were due to her union activities. Again, the ALJ's determination that Paladino's testimony was unconvincing is entitled to great deference. On this record, we conclude that there was substantial evidence supporting the NLRB's decision that Lisa Walden's suspension and termination were due to her union activities, in violation of the Act.
 
 
 20
 6. After Acquired Evidence: The Company argues that Lisa had engaged in activity, prior to her termination, which, if discovered, would have merited her termination. Specifically, the Company argues that on July 6, Lisa tried to have her security code changed surreptitiously. The Company argues that this conduct independently merited termination, and hence the Board decision to have her reinstated is foreclosed, and the Company's liability for backpay is tolled as of the date of discovery of the wrongdoing.
 
 
 21
 If an employer discovers evidence of prior employee misconduct subsequent to an unlawful discharge, and that misconduct would have merited termination, the employee's right to reinstatement is foreclosed and the employer's liability for backpay is tolled as of the date of discovery. See Tel Data Corp., 315 NLRB 364, Nos. 26-CA-14904, 26-CA-14970, 26-CA-14997, 1994 WL 591743, at * 5 (NLRB Oct. 27, 1994), aff'd in part, rev'd in part, 90 F.3d 1195 (6th Cir.1996).
 
 
 22
 The Company argues on appeal that if it found out that an employee tried to change security codes without telling the Company, that employee would be fired. However, Paladino testified merely that if he had discovered Lisa's conduct, he would have "taken some other action, or quicker action." The ALJ found this testimony equivocal and unconvincing. Such credibility determinations are entitled to deference.
 
 
 23
 We have considered all the arguments raised by the Company, and find them to be without merit.
 
 
 24
 Accordingly, the Decision and Order of the National Labor Relations Board is ENFORCED.
 
 
 
 *
 The Honorable Frederic Block, United States District Judge, Eastern District of New York, sitting by designation