NOT RECOMMENDED FOR FULL TEXT PUBLICATION
File Name: 05a0340n.06
Filed: May 3, 2005

Nos. 03-2527, 04-1004

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| GUARDIAN AUTO TRIM, INC., | ) | |
| | ) | |
| Petitioner/Cross-Respondent, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE NATIONAL |
| | ) | LABOR RELATIONS BOARD |
| | ) | |
| NATIONAL LABOR RELATIONS BOARD, | ) | |
| | ) | |
| Respondent/Cross-Petitioner. | ) | |
| | ) | |
| | ) | |
| _____ | ) | |

BEFORE:    BATCHELDER and COLE, Circuit Judges; RUSSELL, District Judge[*]

**RUSSELL, District Judge.** Guardian Auto Trim, Inc. ("Guardian") appeals a finding from

the National Labor Relations Board ("NLRB") that Guardian violated Sections 8(a)(3) and 8(a)(1)

of the National Labor Relations Act (29 U.S.C. § 158(a)(3) and (1)) by discharging employees

Jimmie Powell and Brian Smith because of their union activity. Guardian argues that the NLRB's

decision should be reversed for two reasons. First, Guardian argues that because the NLRB rejected

some of the Administrative Law Judge's ("the ALJ") findings regarding animus that no evidence

of animus is present as required under the applicable case law. Second, Guardian argues that the

finding of disparate treatment should be reversed because the NLRB and the ALJ failed to consider

_____

[*]Honorable Thomas B. Russell, United States District Judge for the Western District of
Kentucky, sitting by designation.

the way in which the Human Resources Department has treated similar conduct. For the reasons stated below, we affirm the decision of the NLRB.

## BACKGROUND

Guardian has a plant in Evansville, Indiana that manufactures plastic automotive trim parts. In 1999, the International Union of Electronic, Electrical, Salaried, Machine & Furniture Workers ("Union") began organizing an election for the employees to vote on whether they wanted union representation. The election was held in April 2000 and the Union lost.

Mr. Powell and Mr. Smith are union supporters, and Powell and Smith had worked for Guardian for almost eleven and four years, respectively. During the Union election campaign in 1999 and 2000, they campaigned for the union by giving out handbills at the plant, wearing t-shirts and buttons, and talking to other employees about the Union. Even after the Union lost the election, Mr. Powell and Mr. Smith handed out handbills again in June and December of 2000. On March 19-21, 2001, Mr. Powell and Mr. Smith attended a NLRB hearing on charges against Guardian of unfair labor practices and election objections arising from Guardian's conduct during the campaign.

On October 14, 2001, Mr. Smith and Mr. Powell were working a weekend overtime shift under temporary group leader, Kenneth Maikranz. Mr. Maikranz ordered the workers to stop working because the parts that they were going to load on the paint line were defective. According to standard procedure, Mr. Maikranz asked the workers to clean the line before the next shift began. Instead of cleaning the line, Powell and Smith left the line to smoke a cigarette.

Powell and Smith walked off without cleaning the line because they thought it was

clean enough. Unfortunately, Maikranz, who was a first-time group leader, thought it was not clean enough. When Powell and Smith went to the time clock to punch out, Maikranz came over and told them, "we don't walk off the line without the line being clean, we don't do that on this line." Powell replied that he did not know what Maikranz was talking about but they could discuss it the following weekend. Both Powell and Smith punched out and went home.

The incident was brought to the attention of Jeff Evans, Guardian's Employee Human Relations Manager. Evans conducted an investigation but did not take the statements of some of the other workers, including Steve Phipps, who was a known union supporter. Powell and Smith were fired because they "walked off the job" and for insubordination.

The NLRB's General Counsel issued a Complaint and Notice of Hearing on June 27, 2002, alleging that Guardian violated Sections 8(a)(3) and 8(a)(1) of the Act by discharging Mr. Powell and Mr. Smith in retaliation for their union activity. A hearing was held on September 30, and October 1, 2002. On December 31, 2002, the ALJ issued a decision finding that Guardian violated Sections 8(a)(1) and 8(a)(3) in firing Powell and Smith. On September 30, 2003, the NLRB issued its Decision and Order agreeing with the conclusion of the ALJ. The NLRB based its decision to uphold the ALJ's decision on evidence that Guardian did not follow its progressive discipline policy and its disparate treatment of Powell and Smith as opposed to other conduct for which Guardian's employees were fired. Guardian's employee handbook, in effect at the time Powell and Smith were fired, had a "Corrective Action" provision which stated:

Corrective action is administered impartially and consistent with

the nature of the circumstances. Especially serious misconduct such as theft, physical violence or the threat of violence, abusive language or conduct toward a supervisor, destruction of Company property, disregard of workplace safety practices, or violation of Company policies such as the Policy Against Harassment, Substance Abuse Policy, etc., may result in immediate discharge. In most cases, such as those involving below-expectations performance, excessive absences, etc., corrective action will be administered progressively, according to the following steps:
>Step 1–Counseling: The supervisor will document the nature of the counseling (First Warning).
>Step 2–The employee will be issued a written record of the issue and the measures needed for improvement (Second Warning).
>Step 3–Suspension: The employee must complete a written statement committing to improve with regard to the issue at hand before returning to work (Final Warning).
>Step 4–Termination of employment.

The Company reserves the right to modify this policy as appropriate. Factors that are considered in deciding on appropriate corrective action include an employee's past work record, length of service, and other mitigating circumstances.

The NLRB articulated in a footnote what parts of the ALJ's opinion it did not rely on :

In affirming this conclusion that the Respondent's proffered basis for the discharges was pretextual, we do not rely on the judge's findings that the Respondent conducted an incomplete and skewed investigation of the October 14, 2001 incident involving the employees, or that the discipline imposed by the Respondent was not in proportion to the misconduct engaged in by the employees. We also do not rely on the judge's finding that the Respondent's general animus was demonstrated in an earlier Board case in which the Respondent was found to have violated the Act. *Guardian Automotive Trim, Inc*., 337 N.L.R.B. 53 (2002).

The NLRB stated that it *did* "rely particularly on disparate treatment to show the

Respondent's antiunion motive for discharging Powell and Smith." By "disparate treatment,"

the NLRB meant that, "[Guardian] failed to follow its own progressive discipline policy. That

is, it did not issue a lesser corrective action to Powell and Smith as it did in regard to other employees disciplined by the Respondent for similar conduct."

**ANALYSIS**

The NLRB found that Guardian violated section 8(a)(1) and (3) of the Act by discharging Powell and Smith because of their union activity. We review the NLRB's findings of fact and its application of law to the particular facts under the "substantial evidence" standard. *Time Auto. Transp., Inc. v. Nat'l Labor Relations Bd.*, 377 F.3d 496, 499 (6th Cir. 2004). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In this case, we must determine whether substantial evidence supports the NLRB's conclusion that Guardian's actions against Powell and Smith violated section 8(a)(1) and (3) of the Act.

The NLRA guarantees employees "the right to self-organization, to form, join, or assist labor organizations . . . ." 29 U.S.C. § 157. Section 8(a)(1) makes it an unfair labor practice "to interfere with, restrain, or coerce employees in the exercise of [those] rights . . . ." 29 U.S.C. § 158(a)(1). Section 8(a)(3) bans "discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization." 29 U.S.C. § 158(a)(3). An employer violates both Sections 8(a)(1) and (3) of the Act when it discharges employees because of union activity. *Metropolitan Edison Co. v. NLRB*, 460 U.S. 693, 698 n.4 (1983)*; Birch Run Welding & Fabricating, Inc. v. NLRB*, 761 F.2d 1175, 1179 (6th Cir. 1985).

This court looks to the NLRB's *Wright Line* test in assessing an employer's motivation in

unlawful discrimination cases. *NLRB v. Main Street Terrace Care Center*, 218 F.3d 531, 541

(6th Cir. 2000); *Wright Line*, 251 N.L.R.B. 1083 (1980)(approved by the United States Supreme

Court in *NLRB v. Transportation Management Corp.*, 462 U.S. 393 (1983)). Under the *Wright*

*Line* test, counsel for the NLRB first has the burden of establishing a prima facie case of

unlawful discrimination. *Main Street Terrace Care Center*, 218 F. 3d at 541. If the NLRB

establishes a prima facie case, then the burden shifts to Guardian to prove by a preponderance of

the evidence that it would have taken the same action against Powell and Smith even if they had

not been involved with the Union. *Id.*

To establish a prima facie case, the NLRB must show: (1) the employee was engaged in

protected activity; (2) the employer knew of the employee's protected activity; and (3) an

inference that anti-union animus motivated the employer's adverse employment action, at least

in part, or that the protected conduct was a motivating factor in the adverse action. *NLRB v.*

*General Fabrications Corp.*, 222 F.3d 218, 226 (6th Cir. 2000). In this case, there is no dispute

that Powell and Smith were both advocates for the Union before and after the election, and that

Guardian's management knew of their Union involvement. Only the third element, which

examines the motivation of the employer, is at issue.

We have held that the following factors create an inference of anti-union animus: (1) the

company's expressed hostility toward unionization combined with knowledge of the employees'

union activities; (2) inconsistencies between the proffered reason for discharge and other actions

of the employer; (3) disparate treatment of certain employees compared to other employees with

similar work records or offenses; (4) a company's deviation from past practices in implementing

the discharge; and (5) proximity in time between the employees' union activities and their

discharge. *Id*. Under each of these factors, substantial evidence supports the NLRB's decision

that counsel for the NLRB at least established *an inference* that anti-union animus or the

employees protected conduct motivated Guardian to fire Powell and Smith.

Under the first factor, Guardian had expressed hostility toward unionization and had known

that Powell and Smith were union supporters. Guardian expressed its hostility toward unions by

a section in the employee handbook titled "Our Position Regarding Unions:"

> As a Company employee, no third party charges you dues, tries to
> speak for you, or interferes with the successful relationship we are
> working to achieve….We are also convinced that where there are
> unions, there frequently is trouble, tension, and hostility–and the
> ever present possibility of strikes….Our customers believe in us.
> We continually tell them they can count on us to deliver on time,
> that our people work together to solve their problems, and that we
> are free from labor strife, outside controls, strikes, or even the
> threat of strikes.

Mr. Evans testified that he had seen Powell and Smith wearing union shirts and buttons

prior to discharging them.

Under factor five, we must consider the proximity in time between the union activities

of Powell and Smith and their discharge. Powell and Smith were fired in October 2001, while

Guardian was defending the Union's unfair labor practice suit against it arising from Guardian's

conduct during the campaign and election in April 2000. In December 2001, an administrative

law judge found in favor of the Union. Even after the Union lost the election, Powell and Smith

continued to disburse handbills in June and December 2000. On March 19-21, 2001, Powell and

Smith attended the NLRB hearing on the Union's allegations.

Although there is no evidence in the record showing that Powell and Smith engaged in Union activity in or around October 2001, the fact that they continued advocating for the Union *during the unfair labor practice suit*, combined with the fact that the *suit was ongoing* in October 2001, is sufficient to find that proximity in time between the employees' union activities and their discharge creates an inference of anti-union animus.

Under factors two, three, and four, substantial evidence suggests that there were inconsistencies, disparate treatment, and deviation from past practice in discharging Powell and Smith. The ALJ examined the instances of discipline in the record where employees were disciplined for going on break without permission or for refusing to follow directives. The Board concluded that the harshest penalty given in similar situations was a Final Warning. But in one exception, an employee was fired for failing to do what she was told to do. In contrast to Smith and Powell, who had worked eleven years and four years, respectively, the fired employee had only worked two and a half months. Under Guardian's discipline policy, when determining the appropriate disciplinary action, Guardian should consider the employee's past work record and length of service as mitigating factors. Therefore, substantial evidence supports the conclusion that the Guardian should have considered the work record and length of service as mitigating factors in Powell and Smith's case.

Guardian alleges that the NLRB failed to adequately consider three instances where the Human Resource Department fired employees. The NLRB did consider these cases but found that the misconduct in those cases was more "egregious." Those incidents were considered under Guardian's discipline policy as "serious misconduct" with such examples being listed as

"theft, physical violence or the threat of violence, abusive language or conduct toward a supervisor, destruction of Company property, disregard of workplace safety practices, or violation of Company policies such as the Policy Against Harassment, Substance Abuse Policy, etc."

All of the three incidents were "serious misconduct" justifying immediate discharge. One employee repeatedly refused to remove jewelry or gloves while on the line, which was a "disregard of workplace safety practices." Another employee refused to follow an instruction, yelled, walked off the line, and left without punching out. The supervisor thought he had quit but later he was fired for "abusive language or conduct toward his supervisor." The third employee was fired for using profanity toward his supervisor and threatening to hurt his supervisor, which were "threats of violence" and "abusive language toward a supervisor."

In contrast, Powell and Smith did not yell at or threaten a supervisor. They did not walk off the line because production on the line had already stopped. Additionally, other group leaders allowed employees to leave the line when it was as clean as it was when Powell and Smith left on October 14, 2001. Even if "abusive…conduct toward a supervisor" was broadly interpreted to cover their insubordination, that insubordination was not as severe as the insubordination of the other fired employees. Consequently, substantial evidence supported the NLRB's distinction between Powell and Smith's situation and other situations where Guardian fired employees.

For the foregoing reasons, there was substantial evidence to support the NLRB's finding that counsel for the NLRB had established a prima facie case of improper motivation.

In order to meet its burden of showing that it would have fired Powell and Smith even if they were not Union advocates, Guardian alleges that it followed its disciplinary policies in firing Powell and Smith for their allegedly "serious" misconduct. Substantial evidence supports the NLRB's finding that Guardian did not meet its burden. The record supports a finding that Powell and Smith's misconduct was not "serious" and that Smith and Powell were disciplined differently than other employees who were similarly insubordinate. Powell and Smith are two employees with long tenure and good work records, yet they were discharged because they failed on *one occasion* to follow cleanup instructions from a person who was not their normal boss. There was no evidence in the record to suggest Powell and Smith were disrespectful or uncooperative to their group leaders, or to other supervisors, on any other occasion in their history as Guardian employees. Besides one warning each for attendance, there is no evidence of any other disciplinary action taken against Powell and Smith in the years they worked at Guardian. In light of their employment history, it was reasonable for the NLRB to find that Powell and Smith's failure to follow Maikranz's clean-up direction was not one of the limited cases of "especially serious misconduct" for which discharge is appropriate under Guardian's disciplinary policy. Guardian's disciplinary policy would therefore require, as in "most cases," that Guardian give Powell and Smith each two warnings and a suspension before firing them. Powell and Smith were not, however, given first or second step warnings or suspensions.

The fact that Guardian fired Powell and Smith, but in past similar circumstances issued warnings or suspensions, provides substantial evidence to support the NLRB's finding that Guardian did not meet its burden of establishing that it would have taken the same action if

Powell and Smith had not been involved with the Union.

**CONCLUSION**

Because substantial evidence supports the NLRB's finding that Guardian violated

Sections 8(a)(3) and 8(a)(1) of the National Labor Relations Act by discharging employees

Jimmie Powell and Brian Smith for union activity, we **AFFIRM** the NLRB's order.

**ALICE M. BATCHELDER, Circuit Judge, Dissenting.** I respectfully dissent, not

because I have any quarrel with either the reasoning or the result in the majority opinion, but

because the record in this case contains absolutely no evidence upon which we can determine

that we have jurisdiction over this appeal. According to the NLRB's decision, all of the activity

complained of occurred in Indiana. The record contains no reference to or evidence of any

activity or business facility anywhere other than in Indiana. Guardian's brief says that

jurisdiction is proper in this court under 29 U.S.C. § 160(f), but does not discuss the factual basis

for jurisdiction. The NLRB's Cross-Application for Enforcement specifically states that

> The Court has jurisdiction over this cross-application pursuant to Section 10(e)
> and (f) of the National Labor Relations Act, as amended (29 U.S.C. § 160 (e) and
> (f)), because the Respondent is aggrieved by the Board's order. Venue is proper
> in this Circuit because the unfair labor practice(s) occurred in Evansville, Indiana.

The NLRB's brief explicitly states that jurisdiction is proper in the Sixth Circuit because the

activity that is the subject of the action occurred in Indiana. But Indiana, the parties may be

surprised to learn, is not in the Sixth Circuit.

The statutes cited by the NLRB provide, in pertinent part:

(e) Petition to court for enforcement of order; proceedings; review of judgment

> The Board shall have power to petition any court of appeals of the United States,
> or if all the courts of appeals to which application may be made are in vacation,
> any district court of the United States, within any circuit or district, respectively,
> wherein the unfair labor practice in question occurred or wherein such person
> resides or transacts business, for the enforcement of such order . . .

29 U.S.C. § 160(e).

(f) Review of final order of Board on petition to court

> Any person aggrieved by a final order of the Board granting or denying in whole
> or in part the relief sought may obtain a review of such order in any United States
> court of appeals in the circuit wherein the unfair labor practice in question was
> alleged to have been engaged in or wherein such person resides or transacts
> business . . .

29 U.S.C. § 160(f).

Additionally, Rule 15(b) of the Federal Rules of Appellate Procedure, which governs

applications to enforce orders of the NLRB, requires that the application must contain, among

other things, "the facts upon which venue is based." FED. R. APP. P. 15(b)(3).

Not wanting to be too hasty in concluding that we lack jurisdiction over this appeal, we

specifically inquired of the parties what the basis for jurisdiction in this circuit might be. The

petitioner did not respond, but the NLRB sent a letter advising that counsel for Guardian had

"represented" to counsel for the Board that Guardian has facilities in Michigan and Kentucky,

and therefore, jurisdiction is proper under Section 10(f) of the NLRA (29 U.S.C. § 160(f)).

While I do not question that jurisdiction is indeed proper in this circuit if Guardian has facilities

within this circuit, I do not think that the representation of counsel for one party based on the

representation of counsel for the other suffices to demonstrate the facts upon which our

jurisdiction must be premised.