# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued May 6, 2015          Decided July 24, 2015

No. 12-1054

BRUCE PACKING COMPANY, INC.,
PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

LABORERS' INTERNATIONAL UNION OF NORTH AMERICA,
LOCAL NO. 296, AFL-CIO,
INTERVENOR

———

Consolidated with 12-1137

———

On Petition for Review and Cross-Application
for Enforcement of an Order of
the National Labor Relations Board

———

*Bryan P. O'Connor* argued the cause for petitioner. With him on the briefs were *Joseph E. Schuler* and *Joel J. Borovsky*.

*Nicole Lancia*, Attorney, National Labor Relations Board, argued the cause for respondent. With her on the brief were *John H. Ferguson*, Associate General Counsel, *Linda Dreeben*, Deputy Associate General Counsel, and *Usha Dheehan*, Supervisory Attorney.

Before: ROGERS, GRIFFITH, and WILKINS, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* GRIFFITH.

GRIFFITH, *Circuit Judge*:

Bruce Packing Company petitions for review of a decision of the National Labor Relations Board that the company committed unfair labor practices in an effort to beat back a union-organizing drive at one of its plants. For the reasons set forth below, we grant in part and deny in part both the company's petition for review and the Board's cross-application for enforcement.

I

Bruce Packing operates two meat-processing plants in Oregon, one in Silverton, the other in Woodburn. Jorge Mesa managed the sanitation department in both plants, with Osmin Martinez serving as his assistant. Thirteen people worked the day shift in the sanitation department at the Silverton plant under supervisor Abel Esparza. Faced with adverse economic conditions, on June 25, 2009, the president of Bruce Packing directed department managers to reduce their total staff at Silverton and Woodburn by ten percent within two days. Mesa told Martinez to pick sanitation employees from the day shift and swing shift at both plants to lay off. Martinez

terminated workers from both shifts in both locations, including four from the Silverton day shift: Manuel Coria, Jose Carmen Maciel, Daniel Luna, and Federico Nieves Rojas.

Just the month before, these four employees had begun supporting efforts by Laborers' International Union of North America, Local No. 296, to organize the employees of the plant. Coria hosted union meetings at his home, distributed union literature, and talked to his co-workers about the benefits of the union in the employee lunchroom in view of Esparza's office. Maciel attended the meetings in Coria's home and participated in the lunchroom talks, as did Luna. Rojas also joined the lunchroom talks and voiced his support for the union, though he never attended any of the meetings at Coria's home.

A few months after the layoffs, a Regional Director of the National Labor Relations Board issued a complaint against Bruce Packing, alleging that the company had committed unfair labor practices in violation of sections 8(a)(1) and (3) of the National Labor Relations Act (NLRA) by discharging Coria, Maciel, Luna, and Rojas for supporting the union's drive to organize. The complaint also alleged that the company coercively interrogated and threatened employees with unspecified reprisals if they continued to engage in union activities.

During a three-day hearing before an Administrative Law Judge, Martinez testified that he alone decided whom to terminate. He claimed that he spent thirty minutes evaluating the work performance of seventy employees and another thirty minutes deciding whom to terminate. Martinez asserted that

he based his decision on his own observations as well as prior performance reports that he received orally from Esparza, but that he never reviewed any personnel files or spoke with Esparza about the terminations. Martinez further testified that Rojas was laid off for his repeated tardiness. In his testimony, Esparza confirmed that he had told Martinez of Rojas's poor attendance. Coria testified that he remembered Rojas saying that he "kind of" understood why he was laid off, because he had been late frequently.

Maria Cortez, Maciel's wife and coworker at the Silverton plant, testified that Esparza spoke to her on the phone on June 19 for some eighty minutes. According to Cortez, Esparza asked her to confirm that employees were forming a group to support the union. She also claimed he cautioned her that the employees "should be careful because this was a delicate thing." J.A. 61. Cortez alleged that Esparza promised her a raise and asked her to tell Maciel and Coria that he "had a raise for them and that they should be very careful because this was really . . . very delicate." J.A. 62. Esparza denied making these statements.

Finally, Mauro Navarro, a sanitation employee from the night shift at the Silverton plant who was also terminated, testified that he went to Esparza's home to speak with him after the layoffs. Navarro claimed that Esparza said that he did not know why Navarro was laid off, but that he had terminated the day shift employees because of their support for the union. Esparza testified that he had simply told Navarro that he did not know why Navarro had been laid off.

At the close of the final day of the hearing before the ALJ, Bruce Packing rested its defense and the Board's

General Counsel called no rebuttal witnesses. The General Counsel then moved to amend the complaint based on Cortez's testimony the day before to allege that Bruce Packing had committed an additional unfair labor practice by unlawfully promising wage increases and better benefits to Cortez, Maciel, and Coria if they ceased advocating for union organization. Bruce Packing objected that amending the complaint so late in the hearing was a violation of due process. The ALJ instructed the parties to brief the question of whether the amendment should be permitted.

Following briefing, the ALJ denied the General Counsel's motion to amend the complaint, reasoning that Bruce Packing had insufficient notice to defend against the new charge. On the merits of the claims in the complaint, the ALJ concluded that Bruce Packing's discharge of Maciel, Coria, and Luna violated the NLRA. She did not credit any of Martinez's uncorroborated testimony and found that Esparza had "substantial input" in selecting the employees for termination. She found credible Navarro's statements that Esparza chose the employees who were terminated based on their support for the union. As for Rojas, the ALJ found sufficient evidence that he would have been laid off for his poor work attendance regardless of his support for union organization.

On appeal, the Board affirmed the ALJ's conclusion that Bruce Packing violated the NLRA by terminating Maciel, Coria, and Luna. However, over the dissent of one member, the Board reversed the ALJ's refusal to allow the General Counsel to amend the complaint. The Board found that the issue had been "fully litigated," and concluded that the company had violated the Act. Also over a dissent, the Board

reversed the ALJ's dismissal of the charge related to Rojas's termination, concluding the company had failed to show that he was laid off for poor attendance. Bruce Packing timely appealed the Board's ruling on these two issues, and the NLRB filed a cross-application for enforcement of its order in full. This court has jurisdiction over the final decision of the Board pursuant to 29 U.S.C. § 160(e), (f).

II

Our review of the substance of the Board's decision is limited, and we will set it aside "only when the Board has acted arbitrarily or otherwise erred in applying established law to the facts, or when its findings of fact are not supported by substantial evidence in the record considered as a whole." *ConAgra, Inc. v. NLRB*, 117 F.3d 1435, 1438 (D.C. Cir. 1997) (internal quotation marks omitted); *see also Bally's Park Place, Inc. v. NLRB*, 646 F.3d 929, 935 n.4 (D.C. Cir. 2011) ("[W]here the Board has disagreed with the ALJ, as occurred here, the standard of review with respect to the substantiality of the evidence does not change." (internal quotation marks omitted)). We agree with the Board that substantial evidence supports its conclusion that the termination of Rojas violated the NLRA. In contrast, we "owe[] no deference to the [Board's] pronouncement on a constitutional question," leaving us to review the due process claim de novo. *J.J. Cassone Bakery, Inc. v. NLRB*, 554 F.3d 1041, 1044 (D.C. Cir. 2009) (internal quotation marks omitted). We disagree with the Board's decision to allow the late amendment of the General Counsel's complaint, which left Bruce Packing without notice of a new charge that it lacked the opportunity to fairly contest.

A

Section 8(a)(3) of the NLRA makes it an unfair labor practice to "encourage or discourage membership in any labor organization" through "discrimination in regard to hire or tenure of employment or any term or condition of employment." 29 U.S.C. § 158(a)(3). The Board assesses alleged improper terminations under the test set forth in *Wright Line*, 251 N.L.R.B. 1083 (1980). The *Wright Line* test first requires the NLRB General Counsel to make a prima facie showing that "'an antiunion animus contributed to the employer's decision to discharge an employee.'" *Avecor, Inc. v. NLRB*, 931 F.2d 924, 928 (D.C. Cir. 1991) (quoting *NLRB v. Transp. Mgmt. Corp.*, 462 U.S. 393, 395 (1983)). The burden then shifts to the employer to prove by a preponderance of the evidence that it would have taken the same action even if the employee had not been "involved with the union." *Id.*

The parties agree that the General Counsel met his initial burden of showing that Rojas's support for the union was a motivating factor in his termination. But Bruce Packing maintains, as the ALJ originally found, that it showed that Martinez would have terminated Rojas for his poor attendance anyway. "When reviewing for substantial evidence, we do not ask whether record evidence could support the petitioner's view of the issue, but whether it supports the [agency's] ultimate decision." *Fla. Gas Transmission Co. v. FERC*, 604 F.3d 636, 645 (D.C. Cir. 2010). Thus, the question before us is whether the evidence can be read, as the Board reads it, to support the conclusion that Bruce Packing did not show it would have terminated Rojas absent his union activity. We conclude that it can.

Bruce Packing insists that Rojas's attendance record was so poor that Martinez would have chosen to lay him off in any case. There is no doubt that Rojas was often late to work. The record shows that he arrived late seven times between January 26 and March 19 of 2009. Esparza testified that he reported on Rojas's tardiness to Martinez. Even Rojas appeared to recognize that his attendance record could explain his termination, as Coria recalled Rojas saying that he "kind of" understood the decision. The question, however, "is not just whether the employer's action also served some legitimate business purpose, but whether the legitimate business motive would have moved the employer to take the challenged action absent the protected conduct." *Chevron Mining, Inc. v. NLRB*, 684 F.3d 1318, 1327 (D.C. Cir. 2012). Bruce Packing has failed to convince us that the Board acted unreasonably in holding that the company did not meet its burden. The company did not even attempt to compare Rojas to other employees to show that he would have been terminated regardless of his union activity. For example, there is no evidence that Rojas's history of tardiness was unusual. The record suggests that at least one other employee arrived to work late eight times in 2008 but was not let go. Thus, although there is evidence that Rojas was often late, there is no credited evidence before us that shows Bruce Packing would have terminated Rojas for this reason alone. In this light, the evidence amply supports the Board's decision to reverse the ALJ and hold Bruce Packing accountable for Rojas's discharge.

9

B

Bruce Packing also alleges that the Board denied it due process by allowing the General Counsel to add a new allegation to the complaint at the end of the hearing before the ALJ. The NLRA permits the Board to amend a complaint "in its discretion at any time prior to the issuance of an order based thereon," 29 U.S.C. § 160(b), but such a generous provision is limited by fundamental principles of fairness. *See NLRB v. Blake Constr. Co.*, 663 F.2d 272, 283 (D.C. Cir. 1981) (noting that due process requires that the "charged party is given adequate notice of all the alleged violations of the Act and that these violations are litigated before sanctions are imposed").

In *Conair Corp. v. NLRB*, we explained that "the critical issue" with a late amendment to a complaint is not "whether there is substantial evidence in the record" to support the Board's conclusion that a company has committed the newly-added offense, but whether the company was "told before the hearing record closed that the stakes included liability for" the proposed new charge. 721 F.2d 1355, 1371 (D.C. Cir. 1983). The proposed amendment in this case fails that test. The General Counsel waited until the very end of a three-day hearing, after Bruce Packing had rested its defense, before it moved to amend the complaint to include a new allegation that the company unlawfully promised employees an increase in wages in exchange for their agreement to stop supporting the union. Because no such charge had been introduced when Cortez gave the relevant testimony regarding Esparza's promise of wage increases, Bruce Packing was not aware that her testimony might serve as a basis for liability and had no reason to pursue the issue. True, the testimony was

undoubtedly unfavorable to the company and perhaps the better course would have been to cross-examine Cortez and explore the matter with Esparza. But because the testimony was not tied to a charge, Bruce Packing focused its attention elsewhere after eliciting from Esparza a general denial regarding the conversation. *Conair* requires that "it must be clear that the parties understand exactly what the issues are" at the time of the proceedings. *Id.* at 1372 (internal quotation marks omitted). Where, as here, the company did not know that it could be held liable for a charge related to the promised wage increase until the close of the hearing, that standard is not satisfied.

The Board argues that the amendment should be permitted because the company has not shown what it would have done differently had it the opportunity to fully challenge the charge. But, as we made clear in *Conair*, Bruce Packing has no burden to show that it could have elicited specific testimony or countered with different defenses that would have defeated the belated claim. *Id.* When a late amendment deprives an employer of notice and the opportunity to fairly litigate its liability, we will find prejudice warranting reversal so long as there is even a chance that the company could have successfully defended against the charge. *Id.* Bruce Packing has satisfied that low standard. Given the chance, it could have attacked Cortez's credibility on this specific aspect of the conversation, cross-examined her to expose any inconsistencies in her testimony, or explored the issue more fully with Esparza and other witnesses. No doubt *Conair* places an added procedural burden on the General Counsel to ensure adequate opportunity for such defenses when evidence of potential wrongdoing first emerges during a hearing, but as we have explained previously, "[w]e believe that affording . . .

notice during the proceeding [is] a minimal obligation." *Blake Constr. Co.*, 663 F.2d at 281. The General Counsel did not meet that obligation here.

The Board argues that Bruce Packing could have recalled witnesses to rebut Cortez's testimony after the General Counsel moved to amend the complaint. We disagree. The company had no meaningful opportunity to recall witnesses because the ALJ simply closed the hearing in the face of the due process challenge without giving the company the option to reopen evidence. Moreover, we do not think Bruce Packing was required to attempt to recall witnesses to cure the prejudice created when the General Counsel waited until the very last possible moment to raise the amendment with the ALJ. Nor are we convinced that the result should be different because Bruce Packing failed to object to the ALJ's factual finding that Esparza impliedly promised the raises. Because the ALJ refused to amend the complaint, the factual finding of the implied promise was not connected to the relevant charge. The failure to object neither negates the company's lack of notice nor proves that it fairly litigated the issue. Bruce Packing lacked both actual notice of the new charge during the hearing and the opportunity to fairly litigate the issue. We therefore set aside the Board's decision to allow the amendment.

III

The Board's order will be enforced with respect to all issues, except its conclusion that Bruce Packing illegally promised benefits to employees who stopped supporting the union.